## Sebastian A. Rudolph, Appellant, *v.* Pennsylvania Schuylkill Valley R. R.

*Railroads—Location—Branches—Act of April 4, 1868, sec. 9.*

A railroad company organized under the act of April 4, 1868, P. L. 62, located and constructed a branch from its main line to a village where there was a large manufacturing plant. The resolution of the directors authorizing the location and construction, recited that the branch was "necessary to increase the business of this company and accommodate the trade and travel of the public." Another railroad served the village to which the branch was constructed. After the branch was built, it was used only for the transportation of freight from the manufacturing works, and no station house was erected for the reception or unloading of freight,

and no passenger coach was run on the road.    *Held,* (1) that a landowner whose property had been taken for the construction of the branch, had no standing for equitable relief: (2) that if the branch was not constructed in good faith the commonwealth was the proper party to complain.    ·

*Railroads—Location—Dwelling house—Act of February* 19, 1849, *sec.* 10.

The construction of a railroad so as to cut off the corner of a lot and destroy a barn will not be enjoined where it appears that the dwelling house on the lot is at least one hundred and twenty-five feet from the railroad and that there is ample room on the remainder of the lot for a stable and carriage-house.

Argued Feb. 5, 1895.    Appeal, No. 76, Jan. T., 1895, by plaintiff, from decree of C. P. Montgomery Co., March T., 1890, No. 13, dismissing bill in equity.    Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN JJ.    Affirmed.

Bill in equity for an injunction.

The case was referred to F. G. Hobson, Esq., as master, who reported as follows :

" The Pennsylvania Schuylkill Valley Railroad Company, a corporation organized under the general railroad laws of the commonwealth of Pennsylvania, has built and are now operating a line of railroad reaching from a point of connection with the Pennsylvania Railroad near 52d street, in the city of Philadelphia, to New Boston, a point west of Pottsville in Schuylkill county, a distance of over 105 miles.

" At a meeting of the directors of the said Schuylkill Valley Railroad Company held September 5, 1889, the following resolutions were adopted :

" Whereas, the Philadelphia, Norristown, and Phœnixville Railroad Company, the corporate property, franchises and rights of which by virtue of consolidation and merger became vested in this company, did December, 1883, cause to be located a branch railroad from its main line of railroad at a point near West Manayunk, in the township of Lower Merion, Montgomery county, extending northwardly a short distance and thence across the line of the railroad of the Philadelphia and Reading Railroad Company and thence southwardly between the said railroad of the Philadelphia and Reading Railroad Company and the Schuylkill river to the Pencoyd Iron Works, a distance about one and one quarter miles, and

did at that time cause the said route to be located, marked upon the ground, and a plan thereof made, which is on file in the office of this company, and did then acquire a portion of the property necessary for the construction of the same.

" And whereas, the minutes of the company do not exhibit any formal action by the board of directors in reference to the said subject, therefore, that the said action may be formally evinced,

" Resolved, that the aforesaid action of this company be now formally approved and ratified, with the same effect as though formal action had been taken at the time of said location, and the secretary is directed to certify the said plan accordingly, and the president of the company is authorized to proceed in the construction of said branch railroad at and upon the line so surveyed and marked as aforesaid, with such minor changes as in his judgment may tend to economical construction.

" Subsequently, on November 11th of the same year the following action was taken :

" Resolved, that inasmuch as the present construction of the branch from the main line of the railroad of this company near West Manayunk to Pencoyd, in the county of Montgomery, authorized by a previous resolution, is necessary to increase the business of this company and accommodate the trade and travel of the public, the president is directed to proceed with the construction thereof upon the line of amended survey crossing the Philadelphia and Reading Railroad overhead instead of under grade, as was provided in the former location, and that the action heretofore taken by him on said amended survey is ratified and approved.

" Under this authority the company proceeded to locate and build the branch road specified in the foregoing resolution. In its course it passes through the barn and lot of the plaintiff, Sebastian A. Rudolph.

" Mr. Rudolph is the owner and occupier of a dwelling house in Lower Merion township, this county, fronting on the river road.    The lot on which this dwelling house is built contains in front —— feet, and extends in depth —— feet. Fronting on a public road stands his dwelling house and his office at the distance of —— feet from said road.    There is a private lane running along almost the whole width of his lot.

In the rear of this lane and fronting thereon stands a row of eight tenement houses in the occupancy of various tenants. In a line with these tenement houses and in rear of a continuation of said lane stood the barn of plaintiff. The nearest wall of this barn was 128 feet distant from the nearest point of plaintiff's dwelling house.

" The line of this branch road passes through the corner of plaintiff's lot and completely demolishes this barn. The railroad here is an elevated structure crossing over the Philadelphia and Reading Railroad which adjoins this property on the west by an overhead bridge. The pier of this bridge comes in the place where the stable formerly stood.

" The nearest point the railroad comes to the dwelling house is 128 feet.

" The plaintiff on May 31, 1890, filed his bill in equity, praying for an injunction restraining the said Pennsylvania Schuylkill Valley Railroad Company, its officers, agents, and employees from taking or occupying any portion of his dwelling house and necessary curtilage thereof for the purpose of its railroad or for any other purposes without his consent.

" A preliminary injunction was refused by the court. The railroad company proceeded to lay out this road and has actually built the same and is now operating the road over the line as laid out. The bill was proceeded with and a master appointed who has taken the testimony which is herewith returned.

" The bill and answer raised three distinct questions. It was contended by the plaintiff:

" First. That the said Schuylkill Valley Railroad Company and the Pennsylvania Railroad Company as lessee have no right to construct and operate the said branch road, because the same is to be constructed and operated purely as a private road for the traffic and trade of the Pencoyd Iron Works and not for public trade and travel.

" Second. That this branch road was previously located over another route and that the defendant company on February 3, 1890, filed in the Court of Common Pleas of Montgomery county, No. 112, March Term, 1890, a petition and bond showing an actual location of their proposed branch over said other route, and gave bonds in the sum of $20,000 which was approved

by said court, and that said location is final; and the defendants have no right to change to a new location.

"Third. That the route now occupied being a portion of plaintiff's barn and a necessary part of the curtilage of his dwelling house, cannot be so occupied because of the prohibition contained in the act of February 19, 1849, P. L. 83, which prohibits a railroad from 'passing through any burying ground or place of public worship, or any dwelling house in the occupancy of the owner or owners thereof without his or their consent.'

" We will consider these objections in their order.

" The first objection denies the right of the defendant company to build the road in question because it is not within the purview of the act of 1868, known as the 'General Railroad Laws.'

" The ninth section of that act provides 'that any company incorporated under this act shall have authority to construct such branches from its main line as it may deem necessary to increase its business and accommodate the trade and travel of the public.'

" It cannot, of course, be denied that this railroad company has the right to build a branch when it is for the purpose of increasing its business and accommodating the trade and travel of the public. This is the expressed language of the act, and the question has been passed upon in many instances by the court, as in Western Pennsylvania Railroad Company's Appeal, 99 Pa. 155; McAboy's Appeal, 107 Pa. 548.

" In the last named case the Supreme Court gives a very comprehensive definition of a branch road. It says, 'The definition of a branch railroad under the act of 1868, does not depend upon either its length or its direction. A branch of a railroad is a section of railroad which may be an offshoot from the main road or a shoot from either of its termini. The necessity for such branches and their direction rest in the will and discretion of the president and directors of the corporation by which they are to be constructed.'

" Plaintiff, however, contends that this branch is not intended for trade and travel of the public, but that it is intended solely for the accommodation of the private industrial firm of A. & P. Roberts, who are the owners and operators of an extensive

industrial establishment known as the Pencoyd Iron Works; and they further contend that since the railroad has been built it has been used solely to convey freights to and from the above named works and has run no passenger trains whatever; nor has it delivered freight to any other persons than the aforesaid firm.   It is true that this road runs to and connects with the tracks and switches of the Pencoyd Iron Works; that no station-house is erected for the reception or unloading of freights; that no passenger coach has run over the road so far as shown by the evidence; but it is also true that the resolution above named under the authority of which this road was constructed recites that the building of this road is necessary ' to increase the business of the company and to accommodate the trade and travel of the public.

"Pencoyd is a village with a large number of houses and many people living in the immediate vicinity of this road.   A siding runs along the public road from which cars can easily be loaded and unloaded.   The village and the public are well accommodated with railroad facilities, far better than can be afforded by this branch road, and, no doubt, the other roads are better located to catch the general business of the community.   But I can hardly conceive that, simply because of the greater convenience of another railroad, and the fact that the volume of general business that would come to a new enterprise would be small, should make it unlawful for a new railroad to enter the territory of a rival.   Every reason shows that this company would be very glad to get all the trade that is offered, and no testimony has been submitted to show that any business has been refused.

" The act of assembly of June 19, 1871, provides ' that where it is alleged that the private rights of individuals or the rights or franchises of other corporations are injured or invaded by any corporation claiming to have a right or franchise to do an act from which such injury results, it shall be the duty of the court to ascertain whether the corporation does, in fact, possess the right or franchise from which the alleged injury results, and, if such rights or franchises have not been conferred upon such corporations, then to afford relief.'

" This act the plaintiff invokes and asks the master to declare that this railroad has not the right to construct this branch

road and take the private property of the defendant for the reason above stated.

"He cites the familiar case of Edgewood Company's Appeal, 79 Pa. 257, where the court declared that the road there proposed to be built was not to accommodate the trade and travel of the public, but was a mere attempt by a coal company to connect their line with a railroad company without complying with the provisions of the lateral railroad statutes.

"In that case the incorporators and officers of the railroad company were also the owners of the mine, and the road ended in a gully in which was the opening of the mine. A part of the road was built over the land of the mine company, and their grant to the railroad contained the expressed reservation 'for the right of way for their coal railroad and for no other purposes whatever except such other purposes as are necessary for the ordinary workings of coal works.'

"None of these special features exist in the case at bar. It is not A. & P. Roberts attempting to evade the provisions of the law of lateral railroads; it is the effort of the railroad company reaching out to tap a rich field of freights and business.

"When this branch road was building the same question came before the court of common pleas of Montgomery county on a motion for a preliminary injunction, and the preliminary injunction was refused, and the reasons for the same are given in an able opinion by his honor, Judge WEAND, reported in Schofield et al. v. Pennsylvania Schuylkill Valley Railroad Company, 8 Montgomery County L. R. 125. In that case the court expressed the opinion that the company had the right to build this very road in question. The same question was raised and decided in Dobson v. Pennsylvania Schuylkill Valley Railroad Company, 6 Montgomery County L. R. 109. The light derived from a full hearing has in no wise changed the facts nor the law as then known to the court.

"It is, however, further contended that since those opinions were read on motions for preliminary injunction, the method of defendant company in operating this road has developed itself, and now shows that it is not operated to "accommodate the trade and travel of the public;" that no passenger car has been run over the road since it has been in operation.

"This we think is an objection that will not avail, even if true.

" The act of 1871 above quoted expressly says, 'If such rights or franchises have not been conferred upon such corporation, then to afford relief.'

" The only question for the court to consider is, have the rights and franchises been conferred; not, are the duties and responsibilities incumbent upon the corporation fulfilled.

" Judge ALLISON, in Lejee v. Continental Passenger R. R. Company, 10 Philadelphia R. 362, says on this very subject after quoting the act as above quoted, 'The inquiry which the court is here required to institute is, whether the right or franchise claimed by the corporation charged with a usurpation of power has been conferred or granted to such corporation; whether, by virtue of such grant, it can lawfully do the act which it is alleged inflicts injury upon the private rights of individuals.'

" If the corporation is not fulfilling its duties and responsibilities to the public, this wrong can be righted in another way, but 'if the charter gives the right a court of equity cannot declare that a corporation has forfeited its franchises, on an injunction bill by a private plaintiff:' Western Pennsylvania R. R. Company's Appeal, 104 Pa. 399.

" 'Whether a corporation has failed to perform the conditions of its existence is a question between the state and corporation, which cannot be raised or litigated in an action between the corporation and private parties:' Greenbrier Lumber Co. v. Ward, 3 S. E. 227, cited in American Digest for 1887, page 224.

" We therefore conclude on these points:

" First. That the defendant company has the undoubted right to build this branch road ' to increase the business of the company and accommodate the trade and travel of the public.'

" Second. That nothing has been shown to make us doubt the integrity of the action taken, so as to justify us in saying that this was an attempt to connect an individual siding with the railroad without complying with the provisions of the lateral railroad statutes.

" Third. That the court in this proceeding cannot inquire into the method of conducting the business of this corporation, and from this draw a conclusion that no right to construct the branch existed in the first instance. Testimony was also submitted to prove that this branch road, or a part of it, was act-

ually built by the employees of the Pencoyd Iron Company. On the other hand, the engineer of the railroad company swore that this was a mistake and that no part of this branch road was built by the Pencoyd Iron Company, nor paid for by it, and that the other witness was in error and had mistaken certain sidings for the road itself.

" The master is of the opinion that this latter testimony was the correct statement of the facts of the case and that there was therefore no attempt by the Pencoyd Iron Company to evade the statutes relating to the lateral railroads.

" Secondly. The plaintiff contends that this branch road was previously located over another route and that the defendant company on February 3, 1890, filed in the Court of Common Pleas of Montgomery county, No. 12, March Term, 1890, a petition and bond showing an actual location of their proposed branch over said other route, and gave bonds in the sum of $20,000, which was approved by said court, and that said location is final; and that defendants have no right to change to a new location.

" Whatever other location was attempted, was attempted on other property than that mentioned in the bill, and the master is of opinion that even if another location was made, this plaintiff cannot take advantage of that fact. There was but one location upon the property of the plaintiff, that is the location upon which the railroad was built. The question was virtually decided by this court when the case was before it on motion for a preliminary injunction, and the court there refused the motion and we see nothing now before the master which could or should change the decision that was there arrived at by the court.

" The third contention arises over the meaning of the word 'dwelling house' used in the act of February 19, 1849, section 10. This section reads as follows : ' Not, however, passing through any burying-ground or place of public worship, or any dwelling house in the occupancy of the owner or owners thereof without his, her, or their consent.

" The plaintiff would include in the word ' dwelling house ' not only the actual house itself but also such curtilage as is necessary for its reasonable enjoyment, and in the case at bar he maintains that the barn here destroyed was a part of this

curtilage and necessary for the reasonable enjoyment of the dwelling house by its owner.

"In support of this position, plaintiff cites a number of cases in which the word 'house' has been held to include the curtilage necessary for its reasonable enjoyment. These cases arise in devises of a house as in Bennet v. Bittle et al., 4 Rawle, 339, and in construction of the same word as used in the mechanic's lien acts as in Pennock v. Hoover et al., 5 Rawle, 314.

"I hardly think the above cases are in point. Whilst the curtilage is included in the word 'house' so as to make a reasonable interpretation, yet it has also been recently held by the Supreme Court in Bevan & Bro. v. Thackara et al., 7 Montgomery County L. R. 177, 'That a lien filed against a dwelling house, describing it, will not give the plaintiff the right to include material furnished to a stable, although a sale on the lien would carry the lot and all the improvements including the stable.' Judge BOYER, in Clegg v. Pennsylvania Schuykill Valley R. R. Company, did not think these cases had any application to the point at issue.

"In two important railroad cases in England, the word 'house' in an act of parliament very similar to our act of assembly, has been held to include what is necessary for the convenient occupation of the house: See Steele v. Midland R. R. Company, 1 Chancery Appeal Cases, Law Reports, 285; Grosvenor v. Hampstead Junction R. R. Company, 58 English Chancery R., star page 445.

"These English cases have never been followed in this country, nor have they been cited with approval in any case that has been called to the master's attention.

"In Moses Wells v. Somerset & Kennebec R. R. Company, American Law Register, vol. 2, 659, a case decided by the Supreme Court of Maine, the Maine statutes read, 'No corporation shall take any meeting house, dwelling house, or public or private burying-ground without the consent of the owner thereof.'

"The court there held 'that the term "dwelling house" means only the house itself and includes no part of the garden, orchard, or curtilage.' This act of assembly has been before the Supreme Court of our own state three times. No definite rule has been laid by that tribunal by which to judge what is

included in the word ' house ' and the curtilage appurtenant thereto.    The first case is Swift and Givin's Appeal, 111 Pa. 516, where the court decided that they must so construe a statute as to give a reasonable effect to its purposes and intent, and said ' This necessarily includes some curtilage connected therewith.'    The exact extent of that curtilage cannot be defined by any arbitrary rule as to distance.    As each case arises the right of the owner and occupier of the dwelling house, against hostile location of a railroad, must be determined by a consideration of what is necessary for a reasonable and proper enjoyment of a house as a residence in view of its location and surroundings.

" Decided by this rule the land taken in that case which was a corner in the rear of the lot and distant 155 feet from the nearest portion of the house was not considered as included in the mansion house and necessary curtilage.    This case was followed by Damon's Appeal, 119 Pa. 287.    In that case the land taken by the railroad company was more than 100 feet distant from and not within the same inclosure with the dwelling, and the court held that this land was not included within the prohibitive words of the statute.

" In delivering those opinions Judge GREEN says, ' It may be gravely questioned whether it is within the lawful power of the judiciary department of the government to depart from the plain letter of a statute which is free from ambiguity.    As a general rule of course it cannot be, and is not done,' and in speaking of the former case of Swift and Givin's Appeal, said that the language of that case was somewhat indefinite, but said that the court certainly did mean to limit ' the curtilage to be exempted to that portion of it which was necessary to the enjoyment of the house, not to that which was desirable or convenient, or which depended alone upon the will of the owner.'    The taking of outbuildings has never in this commonwealth, at least, been held a violation of prohibitive words of the act of 1849, and we do not mean to intimate that it would or should be so held.

" The third case, Lyle v. R. R. Co., 131 Pa. 437, was decided in 1890.    In this case the owners had a lot 44 feet wide fronting on a street and extending 96 feet to an alley sixteen feet wide.    Upon this lot there was a dwelling house twelve feet back from Ruth street and three feet from an easterly line of

the lot.   Back of the dwelling house are several small out-buildings, to wit, a coal-house, cow-stable, chicken-house, etc. The railroad company has appropriated a strip of land 16 feet wide and 40 feet long adjoining the alley, moved the outbuildings in upon the lot, and given bond for the damages caused thereby.

"Even in a case as strong as this the Supreme Court refused to declare that the land taken was included within the prohibitive words of the statutes.   The court say, 'The law regards that which is essential to the enjoyment of a dwelling house, and not that which is merely ornamental and pleasant in its surroundings.   The location of a railroad across a lot in which the owner has his dwelling house, or upon grounds which constitute part of a valuable country seat, is not in violation of the statute.'

"Taking the three cases just quoted as showing the spirit in which the court has met this question, we cannot come to any other conclusion than that the barn here taken and the land do not constitute any part of the dwelling house or curtilage which would be exempt under this statute.

"It cannot include an unlimited quantity of land just because the owner of the house for his æsthetic taste or desire for wide spreading acres included a large tract within his inclosure.   Here this barn and land taken was included in a small corner of an extensive lawn.

"Should the private lane before spoken of be extended to the west line of plaintiff's property, the barn and land taken would all fall considerably beyond this line.   There still remains a lot, in front containing some 300 feet, and in depth some 200 feet. This will give ample room for stable and carriage house.   In fact, the plaintiff has, since the building of this road, erected a stable and carriage house upon this inclosure.

"The master is of opinion that while this will greatly inconvenience plaintiff, and has materially lessened the market value of his elegant home, yet the land taken is not necessary for the reasonable enjoyment of his home,—that his stable must be erected where it formerly stood.   For his damage and inconvenience, and for the reduction of the market value of his property he will be compensated in damages by a jury.   His remedy for all inconveniences is adequate.

" There may be and doubtless are cases where the destruction of a barn might practically destroy the dwelling house, where from the character of the curtilage no other place could be found within the inclosure to erect a new stable, but that case is not this case.

" We therefore conclude that in the case before us the railroad has not passed through any dwelling house in the occupancy of the owner.

" This disposes of all the objections mentioned in the bill or raised in the argument before the master.

" The master therefore recommends a decree, dismissing the bill at the costs of the plaintiff."

Exceptions to the master's report were dismissed by the court, SWARTZ, J., filing the following opinion.

" The report of the learned master is a complete answer to the several exceptions filed by the plaintiff.

" The defendant company has the right to build a branch road to increase its business and accommodate the trade and travel of the public. The necessity for the branch road in question is a matter resting in the judgment and discretion of the president and directors of the defendant company. If the branch road fails to make provision for public travel the act of June 19, 1871, gives us, as a court of equity, no authority for interference. The right to establish a forfeiture for such reason rests wholly with the state. This question was before us in several forms and we refer to Penna. R. R. v. Montgomery County Passenger Railway, 3 Dist. R. 58, and Township of Plymouth v. Chestnut Hill Railway, 4 Dist. Reps. 8, wherein we gave our reasons for a refusal to interfere with the railroad constructions by the corporations. Such interference is in effect a finding that the rights of the corporations are forfeited.

" Plaintiff contends that the railroad construction is not made in good faith for the purposes of trade and travel. The master finds no evidence to support this contention. It nowhere appears that the company refused to meet a present demand for travel.

" Upon the question of a prior location, even if the plaintiff may take advantage of it in this proceeding, it does not follow that his bill must prevail. An abandonment of the original location and the adoption of a new route may become neces-

sary in order that the road may be built. It is true a location once made cannot be changed to escape the payment of unsatisfactory damages. Upon this point we cite our opinion found in Hagner v. Penna. R. R., 154 Pa. 477, where the question of a second location as to the branch road now in question was fully considered.

" We deem it unnecessary to add anything to the master's report upon the question of the alleged interference with the plaintiff's dwelling house.

" And now, October 1, 1894, the exceptions to the master's report are dismissed and the plaintiff's bill is dismissed, costs to be paid by him."

*Error assigned* was, among others, (11) above decree.

*Chas. Hunsicker, R. P. White* with him, for appellant, cited on the question of branch railroad: Act of April 4, 1868, sec. 9, P. L. 62; McAboy's Ap., 107 Pa. 548; Appeal of Western Pa. R. R., 99 Pa. 155; Edgewood R. R. Co.'s Ap., 79 Pa. 257; act of April 28, 1871, P. L. 246; act of May 5, 1832, P. L. 501; R. R. v. Iron Works, 31 W. Va. 710; Hagner's Ap., 154 Pa. 477; Moorhead v. Little Miami R. R., 17 Ohio Rep. 340.

On the question of location: Phila. & Gray's Ferry Pass. Ry. Co.'s Ap., 102 Pa. 123; Morris & Essex R. R. Co. v. Central R. R., 2 Vroom, 207; Glamorganshire Canal Co. v. Blakemore, 1 Clark & Finnelly's Rep. 262; Louisville & Nashville Branch Co. v. Nashville Turnpike Co., 2 Swan. 282; Turnpike Co. v. Hosmer, 12 Conn. 364; Griffen v. House, 18 John. (N. Y.) 397.

On the question of dwelling houses: Bennet v. Bittle, 4 Rawle, 339; Pennock v. Hoover, 5 Rawle, 314; Schoels v. Hartreaves, 5 T. R. 48; Hockley v. Lamb, 1 L. Raym. 726; Scanler v. Johnson, T. Jones, 27; Patrick v. Lane, 2 Brownall, 101; Higham v. Baker, Cro. Eliz. 16; Wilson v. Armourer, T. Raym. 207; Loftes v. Baker, Palmer, 376; Carden v. Tuck, Cro. Eliz. 89; s. c., Leon. 214; Hill v. Grange, 1 Plowden, 164; Smith v. Martin, 2 Saund. 394, note 2; Redfield on Railways, vol. 1, 354; Grosvenor v. Hampstead Junction R. R., 58 Eng. Ch. Rep. 446; Pa. R. R. v. Lutheran Congregation, 53 Pa. 451; Steele v. Midland Ry., 1 Ch. Ap. 275; Given's Ap., 111 Pa. 516.

*Charles H. Stinson,* *C. Henry Stinson* and *William F. Solly*
with him, for appellee, cited: Stahl v. Penna. R. R., 2 Dist.
Rep. 286; Lyle v. R. R., 131 Pa. 437; Lelee v. Continental
Pass. R. R., 10 Phila. 362; Twelfth St. Market Co. v. P. & R.
Terminal R. R., 142 Pa. 580; Com. v. Allegheny Bridge Co.,
20 Pa. 185; Hinchman v. Turnpike, 160 Pa. 150; West.
Penna. R. R. Co.'s Ap., 104 Pa. 399.

PER CURIAM, Feb. 25, 1895:

An examination of this record, with special reference to the
legal propositions so clearly and forcibly presented by the
learned counsel for appellant, has not convinced us that either
of the assignments of error should be sustained.

Defendant company is expressly authorized by its charter
" to construct such branches from its main line as it may deem
necessary to increase its business and accommodate the trade
and travel of the public." As evidenced by the Resolution of
November 11, 1889, the construction of the branch line in ques-
tion was avowedly undertaken by the company for these very
purposes; and it does not sufficiently appear that, in construct-
ing and operating the same, there has been any departure from
or abandonment by the defendant or its lessee of either of said
declared purposes. In his second conclusion,—which with
others was approved by the court below,—the learned master
says: " nothing has been shown to make us doubt the integrity
of the action taken, so as to justify us in saying that this was
an attempt to connect an individual siding with the railroad,
without complying with the provisions of the lateral railroad
statutes." In this we think he was right. We find nothing
in the case that would justify the inference of bad faith on the
part of the company, in not carrying out its declared purpose
to exercise the authority given by its charter to construct the
branch line in question. If it were otherwise, the common-
wealth would be the proper party to complain.

In view of the undisputed facts the learned master was
clearly right in holding that the location and construction of
defendants' branch road across the southwesterly corner of
plaintiff's lot does not interfere with the reasonable use and
enjoyment of his dwelling house, on another part of the lot,
at least one hundred and twenty-five feet from said branch

line, and therefore not in any proper sense of the words such a " passing through any . . . . dwelling house in the occupancy of the owner," etc., as the statute was intended to prohibit. This conclusion is abundantly sustained by the authorities cited by the master in support thereof.

All the questions involved have been so fully considered and satisfactorily disposed of by the learned master and court below that further elaboration of either of them is deemed unnecessary. There was no error in dismissing the bill.

Decree affirmed and appeal dismissed with costs to be paid by plaintiff.