# Pioneer Coal Co. *v.* Cherrytree & Dixonville R. R. Co., Appellant.

*Railroads—Eminent domain—Branch—Public or private use—Burden of proof—Equity—Act of June 19, 1871, P. L. 1360—Bill by private person—Procedural questions—Action of directors—Notice to director general of railroads.*

1. In order to entitle a complainant in a bill in equity filed under the Act of June 19, 1871, P. L. 1360, to the equitable remedy which the statute provides, defendant, when properly challenged, must have failed to show a charter power to do the act complained of or it must be shown that something essential to the rightful exercise of the power sought to be asserted is lacking, or that some act has been committed which is so closely connected with defendant's right to exercise the power in question, as in effect to constitute a charter prohibition against its assertion under the facts in the particular case.

2. The burden of showing that a corporation is exercising franchises which it does not possess is on those alleging that it is attempting to do what it is not authorized to do.

3. Where a railroad company has a right to build an extension or a branch, it will be assumed, unless the contrary is plainly shown, that the railroad company's officials have performed their duty in good faith, when they declare a public necessity for an extension, or when they designate such extension as a branch.

4. The mere fact that some selfish interest may have inspired the plan for the construction of such section in no sense prevents that section from being classed as a "branch" road, or public use.

5. Wherever it appears from the attending circumstances that a section of road about to be constructed will in some direct way tend to contribute to the general public welfare, or the welfare of a considerable part of the public, such as the mining and marketing of the coal of the State, it cannot be said that it will not serve a public use.

6. Where a spur or siding from the main track of a railroad was originally built to serve a particular coal mine, the owners of such mine cannot maintain a bill in equity under the Act of 1871, to restrain the railroad company from condemning some of their land for the purpose of extending the tracks to serve another coal mine some distance beyond.

7. As such an extension will serve in part to get the coal supply of the State out of the mines, on its way to the consumer, to

the great benefit of the public of Pennsylvania, the extension is one for public use, sufficient to justify the exercise of the right of eminent domain.

8. It is a rule that inquiry under the Act of 1871, is not permitted concerning the regularity of a condemnation from a mere procedural standpoint.

9. The complaint in a bill filed under the Act of 1871, to restrain the extension of a railroad, cannot allege that the extension was not authorized by the directors of the railroad company, or that the director general of railroads had not joined in the appropriation.

10. Such procedural defects must be determined in the condemnation proceedings proper.

*Equity—Appeals—Findings against appellee.*

11. On an appeal from a decree in an equity suit, the appellee cannot, in order to maintain a decree in his favor, rely on facts which the trial court expressly refused to find.

Argued October 4, 1921. Appeal, No. 50, Oct. T., 1921, by defendant, from decree of C. P. Indiana Co., March T., 1920, No. 2, on bill in equity, in case of Pioneer Coal Co. v. Cherrytree & Dixonville Railroad Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Bill in equity under Act of June 19, 1871, P. L. 1360, for an injunction. Before LANGHAM, P. J.

The opinion of the Supreme Court states the facts.

Injunction awarded. Defendant appealed.

*Error assigned,* among others, was decree, quoting it.

*J. N. Banks,* for appellant.—The fact that the Rodkey spur was built at a time when there was no necessity for extending it beyond the necessities of the Rodkey mine does in no way give the Pioneer Coal Company an exclusive title or right and the extension of the road to a private coal mine is not sufficient to defeat the right of defendant to extend its road: Mountz v. R. R., 265 Pa. 67; Windsor Glass Co. v. Carnegie Co., 204 Pa. 459;

Williams v. R. R., 255 Pa. 133; Rudolph v. R. R., 166 Pa. 430; Scott v. Pittsburgh, 266 Pa. 52; McAboy's App., 107 Pa. 548.

The purpose of the condemnation is fully stated in the resolution of the board of directors and in the petition, and in these proceedings the court had no authority to go beyond the resolution of the board of directors and the petition for condemnation to find a purpose other than that contained in the resolution and petition: Mountz v. R. R., 265 Pa. 67; McAboy's App., 107 Pa. 548, 558; Rochester & Pittsburgh Coal & Iron Co. v. Mining Co., 24 Pa. Co. Ct. R. 104; Gring v. Water Co., 270 Pa. 232, 245, 246.

*A. M. Liveright,* with him *S. M. Jack,* for appellee.—A railroad company under guise of its power to construct branches cannot condemn land to extend an industry track to the plant of a competitor of the industry, incidentally taking a part of the industry track: Lance's App., 55 Pa. 16; Jones v. Tatham, 20 Pa. 398.

It must clearly appear that the use will result in some public benefit: Com. v. Bond, 214 Pa. 307; Com. v. Ry., 203 Pa. 608; Vinton Colliery Co. v. R. R., 226 Pa. 131.

Whether the use to which it is sought to appropriate the property authorized to be taken by proceedings under the right of eminent domain, is a public use is a judicial question for the determination of the courts: Phila., etc., St. Ry. Pet., 203 Pa. 354; Edgewood Ry. Co.'s App., 79 Pa. 257; Smedley v. Erwin, 51 Pa. 445; Jacobs v. Water Supply Co., 220 Pa. 388.

From the outset of this contest the coal company has objected to the lack of formal procedure by the railroad company and has persisted in its contention that no recognized method evidencing corporate action has been taken or proved: State Hospital for Criminal Insane v. Water Supply Co., 267 Pa. 29; Boalsburg Water Co. v. Water Co., 240 Pa. 198; Johnston v. R. R., 245 Pa. 338.

A railroad company while under federal control, cannot condemn land through its corporate officers without concurrence or joinder of the director general or other federal authority: Northern P. R. R. v. North Dakota ex rel., 250 U. S. 135.

Opinion by Mr. Chief Justice Moschzisker, January 3, 1922:

This is a proceeding in equity, under section 1 of the Act of June 19, 1871, P. L. 1360, by the Pioneer Coal Company against the Cherrytree & Dixonville Railroad Company, to restrain the latter from building what it claims to be an extension of a branch road, and what plaintiff contends is a mere spur or siding facility for the private use and benefit of a competing coal company; the injunction was granted and defendant has appealed.

Plaintiff has some 1,800 acres of coal land in Indiana County, mined by another company, the latter owning the stock of the former; defendant operates a railroad in the vicinity, a spur or branch of which, leading from a portion of the railroad known as the "Buck Run Branch," is employed as a siding by plaintiff in taking coal from its "Rodkey" mine; this section of road, hereinafter called "Rodkey Spur," is approximately 2,200 feet long, was built in 1905, and since that time has been used solely for transporting coal from plaintiff's mine, constituting the only railroad outlet for that purpose; the condemnation proceedings enjoined in this case were "brought in connection with a proposed extension of the Rodkey Spur eastwardly fifteen hundred feet to lands of the Indiana Moshannon Coal Company, in the course of which seven hundred and fifty lineal feet of surface, an acreage of 1.047, owned by the plaintiff......, are to be taken," and "the proposed taking will appropriate also eighty feet of the eastern end of the Rodkey Spur itself"; this will interfere with the operation of plaintiff's mine and thus materially injure that company.

In addition to the facts already stated, the court below found the following: Defendant's road was built by other and larger railroad corporations, "as and for a public steam railroad, with all the rights of......eminent domain"; when the present condemnation proceedings were begun, on January 19, 1920, this railroad was under "federal control, operation and management," and "the Director General of Railroads" was not made a party to the proceedings; such control terminated on March 1, 1920; plaintiff had "more than one hundred thousand tons of coal unmined at the Rodkey operation," on August 28, 1920, and, "labor conditions permitting," this might be produced at the rate of "about two hundred tons per day." Defendant suggests that by now plaintiff's coal must be approaching exhaustion; but, of course, as to this, we have no knowledge.

These facts, among others, appear in the chancellor's answers to plaintiff's requests: The Indiana Moshannon Coal Company is the only interest that will at present be served by the extension of the Rodkey Spur, and those concerned could be served equally well from the main line of defendant railroad. On the other hand, the chancellor found, at defendant's request, that the ground on which the spur in question is laid was owned in fee by defendant company, having been conveyed to it by plaintiff in 1908; and he refused to find, as desired by plaintiff, that defendant had not taken "proper corporate action" to support its proposed appropriation, or that its board of directors had not passed the necessary resolution authorizing the taking of the land intended to be appropriated.

The court below placed its final conclusion, granting the injunction, squarely on the ground that "defendant railroad company, under the guise of an exercise of the power.......to condemn for the construction of a 'branch,' is attempting to take land privately owned for the construction of what cannot be considered a 'branch' within contemplation [of the law], consequently it is

endeavoring to exercise a power not possessed under its franchise......"; and, the court adds, this "is not the abuse of a franchise power, which admittedly can be questioned only by the Commonwealth, but rather an effort to exercise a nonexistent power which may be successfully contended against by an individual under authority of the Act of 1871."

Defendant contends that, on the facts in this case, the above conclusions are wrong, for several reasons, which we shall presently discuss; while plaintiff takes the position that not only are those conclusions correct in every particular, but the chancellor should have rested his injunction on the additional grounds that no proper resolution to authorize the condemnation had been proved as duly passed by defendant's board of directors, and that such proceedings were void in law because not joined in by the director general of railroads. Neither of these latter positions were adopted by the trial tribunal, although urged upon it.

It is contended by defendant that plaintiff failed to show a case for relief under the Act of 1871; in Gring v. Sinking Spring Water Co., 270 Pa. 232, this court recently gave rather elaborate consideration to that statute, during the course of which (p. 237) we said that section 1 of the act (eliminating certain words unnecessary to an understanding of its terms) provides: "In all proceedings, in courts of law or equity, in which it is alleged that the private rights of individuals are injured by any corporation claiming to have a right or franchise to do the act from which such injury results, it shall be the duty of the court to examine, inquire and ascertain whether such corporation does in fact possess the right or franchise to do the act from which such alleged injury results, and, if such right or franchise has not been conferred upon such corporation, such courts shall restrain such injurious acts."

The opinion we are now discussing (Gring v. Water Co.) states (p. 238) that "the cases where relief was

granted" under the act fall within several classes, and one of these is there designated thus: "(2) those in which, though the power [in a general sense, to do the thing complained of], was apparently given by the corporation's charter, it was attempted to be exercised in a manner, for a purpose or to an extent not authorized by law." Immediately after our list of classifications, we reviewed the authorities which give rise thereto and (pp. 240-241) cited, inter alia, examples of what is meant by "in a manner," "for a purpose," and "to an extent," as used above. Edwards v. Pittsburgh Junc. R. R. Co., 215 Pa. 597, 602, is mentioned as an instance of an attempt to exercise an alleged franchise power "in a manner" not authorized by law; Bly v. White D. M. W. Co., 197 Pa. 80, "for a purpose," and Boalsburg Water Co. v. State College Water Co., 240 Pa. 198, "to an extent" not so authorized. We had no intention, however, to use the phrase "in a manner" as covering procedural points, and this is clearly indicated at page 238 of the opinion; nor did we intend the phrase "for a purpose......not authorized by law" in a broad, comprehensive sense, but only in that suggested by the authority we had in mind. In other words, we did not mean to intimate that the state's right of inquiry into the purpose for which a franchise was to be used could be assumed by the plaintiff in an equity suit brought according to the Act of 1871; and the comment connected with our mention of Bly v. White Co., at the bottom of page 243, shows this, as also does our citation of other cases (p. 244), asserting the right of the State, under circumstances quite similar to those in the Bly case, to make such inquiry to the exclusion of private complainants; on the latter point see also Mountz v. Pittsburgh, B. & L. E. R. R. Co., 265 Pa. 67.

What the Gring Case, as a whole, stands for, so far as the meaning of the Act of 1871 is concerned, plainly appears by the following excerpts from the opinion (p. 241, 242, 246): "The question, in each case of the char-

acter of the one now before us, is as to the existence of
the charter right, and, if found, then, Is the corporation
defendant attempting to exercise its franchise under cir-
cumstances authorized by law?—for it can possess the
right only to that extent......; each decision, from one
aspect or another, turns on the theory of the nonexist-
ence, under the attending circumstances, of a charter
right to do the particular thing in question, the rule
seeming to be that inquiry in a proceeding resting on the
statute must bear some direct relation to the ascertain-
ment of a charter power or right to commit the act com-
plained of, and that restraint can be granted only on a
finding of either the nonexistence of the power or its
nonexistence for the purposes to which it is being put to
the injury of the complainant......; both the actual
words of the legislation before us and the decisions in
point indicate that, in order to entitle one to the equi-
table remedy which the statute provides, defendant, when
[properly] challenged, must have failed to show a charter
power to do the act complained of, or it must be shown
that something essential to the rightful exercise of the
power sought to be asserted is lacking, or that some act
has been committed which is so closely connected with
defendant's right to exercise the power in question as in
effect to constitute a charter prohibition against its as-
sertion under the facts in the particular case, but when
any of these conditions appear, equitable relief is avail-
able,—it always being understood, however, that the
statute does not clothe the courts, at the instance of a
private suitor, with the Commonwealth's general powers
of inquiry." Numerous cases, illustrative of these gen-
eral principles, will be found reviewed on their facts in
the authority from which the above-quoted excerpts are
taken.

Appellee concedes, if the enjoined portion of defend-
ant's road may properly be classed as a branch, then the
court below erred. In McAboy's Appeal, 107 Pa. 548,
557-8, we said that the question whether a proposed

piece of railroad was a branch did not "depend either upon its length or direction"; that any "section" of the road, whether it were an offshoot of the main road or of another section, might be a branch within the meaning of the law.  If the section of defendant's road here in question is a branch, that concededly is the end of plaintiff's case; or, as we shall show later, if the part in controversy is to be built for a public use, whether a branch or not, defendant, under the facts in this case, cannot be restrained.  On the other hand, if, as the court below states, defendant, "under the guise of an exercise of its power to construct a branch," is using its right of eminent domain for the purpose of constructing a mere private siding, not for public use, the Act of 1871 was properly invoked.

We cannot, however, agree with the court below that, either in deciding whether the section of road complained of is a branch, or in determining whether or not it is intended for public use, a rule of strict construction is to be applied, if by "strict construction" is meant that, on a review of the evidence, all doubts must be resolved against the corporation; on the contrary, the rule is that "the burden of showing the company is exercising franchises which it does not possess is on those alleging that [the corporation] is attempting to do what it is not authorized to do—construct a railroad for purely private purposes" (Deemer v. Bells Run R. R. Co., 212 Pa. 491, 493) ; the corporate directors have power to decide as to the location of, and public necessity for, an extension of any part of the road, be it a branch or otherwise (Mayor of Pittsburgh v. Penna. R. R., 48 Pa. 355, 359; McAboy's App., supra, 557), and it is to be assumed, unless the contrary is plainly shown, that such officials, like all other officials, have performed their duty in good faith, when they declare a public necessity for an extension, or when they designate it as a branch; "it is not the special use made [of a section of road] which characterizes it [as a part of the public road], but its convenient

necessity to that part which is [undeniably] for public use" (P., W. & B. R. R. Co. v. Williams, 54 Pa. 103, 107) ; finally, the mere fact that some selfish interest may have inspired the plan for the part in controversy in no sense prevents that section from being classed as a "branch" road, or for public use: Oliver v. Thompson's Run Bridge Co., 197 Pa. 344, 346. The learned chancellor seems to have overlooked most of these rules, and we incline to the belief that the court below erred in its mixed conclusion of fact and law that the section of road here enjoined was not a branch; but it is not necessary to rest our decision on that point, since, under the Pennsylvania authorities, it plainly appears that, even were the section in question properly classed as a "spur," or a "siding," the evidence fails to show it was not to be constructed for a public use, and if the use can be classed as of this character, the proposed condemnation would be an exercise of defendant's franchise, which could not be enjoined under the Act of 1871.

What constitutes public use is a point not free from difficulties, but wherever it appears from the attending circumstances that a section of road about to be constructed will in some direct way tend to contribute to the general public welfare, or the welfare of a considerable element of the public, it cannot be said that it will not serve a public use; this principle is now too well established in Pennsylvania to be questioned: Getz's App., 10 W. N. C. 453, 456, cited with approval in Pittsburgh, etc., Ry. Co. v. Stowe Twp., 252 Pa. 149, 160; Lycoming Edison Co. v. Public Service Commission, 67 Pa. Superior Ct. 608, 611. Here, conceding that the extension under discussion will be largely employed to take coal from the Moshannon Company's properties, yet, since it must also be conceded that the life, happiness and prosperity of the people of Pennsylvania depend to a very large degree upon getting the coal supply of the State out of the mines, on its way to the consumer, this in itself, on the facts at bar, stamps a project like

that before us as one for public use, sufficiently to justify the exercise of the right of eminent domain.

In the instant case, the original extension from the main line was toward the mine of the complainant; now it is to be carried further on, so as to open up another and very considerable field, and it may be that, in the future, further extensions, by branches or otherwise, will be called for to satisfy patrons who require transportation facilities, and to serve public needs. There are no facts present sufficient to overcome the presumption that defendant corporation is doing what it conceives to be its duty as a common carrier, bound to keep up with public demands, or to indicate that it will not continue to so act in the future; but, if at any time it fails in these regards, "the remedy is through appropriate proceeding instituted by the Commonwealth": Rudolph v. Schuylkill Valley R. R. Co., 166 Pa. 430, 437, 444; Vinton Colliery Co. v. Blacklick, etc., R. R. Co., 226 Pa. 131, 135; Pittsburgh, etc., Co. v. Stowe Twp., 252 Pa. 149, 161; Mountz v. Pittsburgh, B. & L. E. R. R. Co., 265 Pa. 67, 69.

The case largely depended upon by appellee, Edgewood R. R. Co.'s App., 79 Pa. 257, 270,—where we say, what of course is still the rule, that owners of land "have the right to demand the interposition of those safeguards [provided by the Act of 1871] when private property is appropriated [under the guise of serving a public use] for a strictly private use" (see also Smedley v. Erwin, 51 Pa. 445, 451; Mory v. Oley Valley Ry. Co., 199 Pa. 152, 155; Deemer v. Bells Run Ry. Co., 212 Pa. 491, 493; Vinton Colliery Co. v. Blacklick, etc., R. R. Co., 226 Pa. 131, 135),—is distinguished on its facts from the case at bar, for there the railroad itself was in no sense a public one, while here there is no doubt of the public character of defendant's road. This distinction of Edgewood's App., which is noted by us in a number of subsequent cases (see Rudolph v. Schuylkill Valley R. R. Co., 166 Pa. 430, 436; Windsor Glass v. Carnegie Co., 204 Pa.

459, 466; Gring v. Sinking Spring Water Co., 270 Pa. 232, 239), also applies to McCandless's App., 70 Pa. 210. We have examined all the authorities cited by plaintiff and think none of them controls the present controversy in its favor; this case, on the main points involved, falls more within the principle of Getz's App., supra.

It is the general rule that inquiry under the Act of 1871 is not permitted "concerning the regularity of a condemnation from mere procedural standpoints": Gring v. Sinking Spring Water Co., 270 Pa. 232, 238; Williams v. D., L. & W. R. R., 255 Pa. 133, 144. This rule is sufficient answer to plaintiff's contention that defendant had failed to prove the resolution for the appropriation to have been actually passed by its directors; although a copy of such resolution was accepted in evidence. The rule also answers the contention that the director general of railroads had not joined in the appropriation. Both of these points involve questions of procedure, which might be raised in the condemnation proceedings proper, but have no place in an equity suit under the Act of 1871, since neither of them, if sustained in fact, would tend to show that defendant had acted in the premises beyond its franchise rights.

It is true that, in Gring v. Sinking Spring Water Co., 270 Pa. 232, 252 et seq., we discussed the subject of proving a resolution authorizing appropriation, and suggested the advisability of showing all relevant facts in connection therewith; but this was to meet the manner in which that particular case was being tried, and, so far as possible, to have the matter disposed of for the satisfaction of those concerned, since the record was about to be sent back for further hearing. We did not intend to lay down any principle contrary to the general rule that inquiry under the Act of 1871 is confined to the charter or franchise rights of the defendant corporation and does not comprehend examination into alleged defects of procedure in asserting such rights; although, of course, "whether the proposed construction be a siding or

a branch, in either case, when property [is] condemned, such taking must be by a corporate act, with as much formality as though it were a part of the main roadbed": Lycoming Edison Co. v. Public Service Commission, 67 Pa. Superior Ct. 608, 612, by KEPHART, J. On the general subject of corporate action to condemn, see also Boalsburg Water Co. v. State College Water Co., 240 Pa. 198, 209. But, returning to the point urged by plaintiff (appellee), that the actual passage by the defendant company's directors of the above-mentioned resolution had not been proved, we may add, to what has been said previously concerning this matter, that the relevant findings, to the extent they go, favor appellant, as hereinbefore indicated, therefore appellee is not in a position (on this, its opponent's, appeal) to question the fact of the resolution in any manner; and our opinion in State Hospital v. Consolidated Water Supply Company, 267 Pa. 29, 38, 39 (cited by appellee), contains nothing to the contrary. That case, so far as the point in hand is concerned, turned on the well-established rule that an appellee may, to sustain the decision appealed from, suggest legal reasons other than those depended on by the court below; it in no sense justifies the contention that one may, to support a decree in his favor, depend on facts which the trial court expressly refused to find, yet that is what the present appellee would do.

In conclusion, whether or not the appropriation of plaintiff's land is in any way defective from a procedural standpoint must be determined, if such a determination is desired, in the condemnation proceedings proper, and, if the appropriation is sustained, the question of damages must be adjusted there; hence we have neither elaborated nor discussed the findings concerning the nature and extent of the injury which plaintiff claims it will suffer. Defendant is a corporation enjoying the power of eminent domain, and, so far as the present record shows, nothing appears to warrant equitable in-

terference with the exercise of that power; the court below erred in deciding otherwise.

The decree is reversed, the injunction is set aside, and the bill is dismissed; plaintiff to pay the costs.