## C. O. Struse & Sons Company v. Reading Company.

Robert Mair (of *Rambo, Rambo & Mair*), for exceptions.

W. J. Graham, contra.

MARTIN, P. J., March 3, 1930.—The plaintiff has filed forty exceptions to the adjudication in this case, covering every finding and conclusion of the Chancellor adverse to the contentions of the plaintiff.

The testimony establishes the facts found by the adjudication.

The real question raised by the exceptions is whether the land of plaintiff which defendant proposes to condemn is to be used for a branch of defendant's railroad or for a private siding.

It clearly appears that the proposed extension will serve only the plant of Sears, Roebuck & Company and the remaining land of plaintiff or of those who may purchase the land; but it is not to be built for a mere private use; it will be used in conjunction with the operation of the railroad of defendant and the accommodation of the public shipping goods to and receiving goods from Sears, Roebuck & Company.

It is in evidence that during the year 1928, 3977 carloads of merchandise, embracing 226,540 invoices or waybills, were shipped over the Reading tracks to the plant of Sears, Roebuck & Company, and 2499 carloads, embracing 113,270 invoices or waybills, were shipped from the plant of Sears, Roebuck & Company, exclusive of goods handled by the United States parcel post. Under this state of facts it cannot be seriously contended that the public is not interested in the connection of the Reading tracks with the plant of Sears, Roebuck & Company.

In Getz's Appeal, 10 W. N. C. 453, it was held that a proposed condemnation for a railroad siding or branch railroad to accommodate only one manufacturing plant was not a mere private siding, but was for public use. The court said: "We cannot assent to the opposing contention which holds that a side track which leads only to a manufacturing or mining establishment, held in private ownership, is illegal because it does not subserve a public use. These establishments are very numerous, especially in Pennsylvania, along a near line of railroad. They serve to develop the resources of the State, they give employment to vast numbers of citizens and constitute a most important element in the general wealth and prosperity of the community. Convenience and consequent cheapness of transportation are in most cases essential and in many vital to their maintenance. Moreover, considerable portions of the general public are directly interested in the traffic which goes to them and in that which comes from them. Hence, in the connection in which we are now considering them, we cannot regard them as merely private interests and, therefore, without the pale of that public use for which private property may be taken in the construction of railroads lawfully established and actually used for public purposes."

This decision was cited with approval in Pioneer Coal Co. v. Cherrytree & Dixonville R. R. Co., 272 Pa. 43, where this question of public or private use

of land condemned for railroad purposes is discussed by Chief Justice von Moschzisker, and the authorities cited, holding that a condemnation for the building of a branch railroad to a single coal mine is for a public use, the interest of the public in the output of the coal mine being a proper subject for consideration.

All the findings of fact are warranted by the evidence, and the conclusions of law followed from the findings.

The third and fourth exceptions refer to matter in the discussion of the case. This is not the subject of exception.

Plaintiff's eleventh request for finding of fact was refused because of the use of the words "private siding" in referring to the old siding. The testimony does not warrant the assumption that the old siding was a "private siding." It may have been as much of a branch railroad or branch of defendant's railroad in which the public has an interest as the one the defendant proposes to build.

Plaintiff's twentieth request for finding of fact was refused because it involved a conclusion by the operating department of the defendant company based upon an expression of one witness that the suggested change was "too expensive."

Gring *v.* Sinking Spring Water Co., 270 Pa. 232, was cited with approval in Pioneer Coal Co. *v.* Cherrytree & Dixonville R. R. Co., *supra.* It was stated that where "the power is found to exist in a corporation to do the act complained of in the manner it is being done, the authority of the court to interfere is at an end."

The exceptions should be dismissed.

### Final decree.

And now, March 3, 1930, upon consideration of the foregoing case, it is ordered, adjudged and decreed as follows:

1. The forty exceptions filed by plaintiff to the adjudication in this case are overruled and dismissed.

2. The bill of complaint is dismissed and plaintiff is directed to pay the costs.

3. The prothonotary is directed to give notice of the filing of this final decree to the parties to the suit or their counsel of record.