# Boalsburg Water Company v. State College Water Company, Appellant.

*Eminent domain—Water companies—Appropriation of stream—
Measure of necessity—Legal formalities—Evidence—Lost minutes
—Proof—Deed for riparian rights—Condemnation by second com-
pany—Equity—Injunction.*

1. The legal formalities necessary for the condemnation of the
water of a stream by a water company are sufficiently complied
with, where it appears proper resolutions to condemn were duly
adopted by the board of directors directing a location on the
ground, which were followed by actual location and formal ac-
ceptance by the corporation. Such resolutions may be proved by
secondary evidence where it appears the minutes have been lost or
destroyed or never recorded.

2. Where a water company, having the right of eminent domain,
formally condemned the water of a certain stream for use in sup-
plying the public with water, and thereafter accepted a deed from
the owner of said water conveying "every right that could be ac-
quired by the party of the second part by condemnation proceed-
ings under the right of eminent domain," and there is nothing in

the record to show that the claim to said waters under the right of eminent domain was abandoned, the settlement of damages and acceptance of the deed is in aid, and not in limitation or derogation, of the original purpose to acquire the water for public use under the power of eminent domain. The statute clearly contemplates an effort to amicably settle the question of damages with the riparian owner. Rights conferred under the power of eminent domain may be acquired by an adverse condemnation proceeding, but they may also be acquired after proper corporate action has been taken by an equivalent agreement between the parties.

3. In such case the condemning company has the right to condemn so much water as may be necessary not only for present purposes but for future needs. The amount necessary for its present and future needs is determined in the first instance by the condemning company (subject to review by the court) and it thereby acquires a prima facie right to the water so condemned.

4. Where in such case a junior water company claims the right to condemn a portion of the same water under the power of eminent domain, the burden is upon it to show that the senior company condemned more water than its present or future needs will require, especially where the waters are those of a small mountain stream, and also that the necessities of the junior company require said water for public use. If it fails in such proof, equity will restrain the threatened condemnation.

Argued Feb. 10, 1913. Appeal, No. 181, Jan. T., 1912, by defendant, from decree of C. P. Centre Co., Dec. T., 1910, No. 2, In Equity, granting injunction in case of The Boalsburg Water Company v. The State College Water Company. Before FELL, C. J., BROWN, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Bill in equity to restrain appropriation of water of a stream under power of eminent domain. Before ORVIS, P. J.

At the trial plaintiff offered in evidence the minute book of plaintiff company to show that several leaves were missing and also offered certain exhibits, appearing hereafter, to show corporate action taken by plaintiff company in the condemnation by right of eminent domain of the water of Galbraith Gap Run. Defendant objected to the exhibits. The court overruled the ob-

jection and admitted the exhibits, which were as follows:

FORM OF STOCKHOLDERS' RESOLUTION.

At a meeting of a majority of the stockholders of the Boalsburg Water Company, the following resolution was offered by Mr. T. D. Boal:

Resolved, That the officers and Board of Directors be directed and authorized to immediately proceed under the right of Eminent Domain to require for the corporate purposes of this Water Company the stream or streams of water and sufficient land adjacent thereto for said corporate purposes upon the property of Henry Reitz, situate in Harris Township, Centre County, bounded and described as follows, to wit:

(Here insert description of whole tract of land.)

To wit, on a tract of several acres recently purchased from the I. Tressler Estate and owned by Henry Reitz, on which was situated formerly a saw mill.

Said part to be so appropriated being bounded and described as follows:

(Here insert description of stream, say a strip of about six feet wide on either side.)

(6) six feet on either side of said stream for a distance of (50) fifty feet along each bank as indicated by four pine stakes and further as may be required for the pipe connection.

Said motion having been seconded was carried by a unanimous vote of the stockholders present, they being a majority of holders of said stock.

FORM OF RESOLUTION OF BOARD OF DIRECTORS.

Pursuant to a meeting of a majority of the stockholders of the Boalsburg Water Company, held on the 11th day of April, A. D. 1907, the Board of Directors passed the following resolution: Said Board having convened after notice for the purpose of considering said special matter on the 11th day of April, 1907.

Resolved, That this Company obtain, for its corporate purposes, the water of the stream or streams situ-

ate upon the property of Henry Reitz, in Harris Township, Centre County; said streams being known as (Here insert names of streams) sources of Spring Creek, Galbraith's Run, Spruce Gap Run, Corner Run and sufficient land adjacent thereto for the proper exercise of the corporate purposes of this Company; said tract of land, upon which said stream or streams are so situated, being bounded and described as follows: (Here insert approximated description of whole tract.) To wit, on a tract of several acres recently purchased from the I. Tressler Estate and now owned by Henry Reitz, on which was situated formerly a saw mill, and the said streams and land to be occupied by them being bounded and described as follows, to wit: (Here insert approximate description of the portion of streams appropriated, and sufficient land, say six feet on either side.)

(6) six feet on either side of said stream for a distance of (50) fifty feet along each bank as indicated by four pine stakes and further as may be required for the pipe connection, and the President and Secretary of this Company are hereby authorized and instructed to enter upon said premises and to take proper steps to have the same condemned by a proceeding under the right of eminent domain, and that the damages of Henry Reitz be assessed by a proper jury of view.

Notice of said resolution and of said entry and all purposes of said condemnation to be given to the said Henry Reitz.

Motion was made by Mr. T. D. Boal, seconded by Mr. J. A. Fortney.

Affirmative votes, Mr. J. M. Wieland.

Negative votes, Mr.        were none.

Motion carried.

J. M. Wieland,
(President.)
J. A. Fortney,
(Secretary.)

Boalsburg, May 25th, 1907.

At a meeting regularly called of the Boalsburg Water Co., J. A. Fortney & T. D. Boal were instructed to make a formal location for a water right on Spring Creek in Galbraith's Gap, on the land of Henry Reitz, obtaining his permission so to do. And said Boal & Fortney are to make this location within one month from date, and take such steps as will render such action legal some time during the ensuing year from said location.

Signed

J. W. WHEELAN Tres. & Sect.

THEODORE DAVIS BOAL,

JOHN A. FORTNEY

Preasant & this meeting

Approved above action

G. W. Ishler.

22nd June, 1907.

J. A. Fortney and T. D. Boal report that on June 21st, 1907, as instructed, they made a final location on the Spring Creek land of Henry Reitz with his consent for a water right of the Boalsburg Water Co. as instructed by the meeting of May 25th, 1907, and they will record their action before June 21st, 1908, as instructed.

JOHN A. FORTNEY,

THEODORE DAVIS BOAL.

The court found that corporate action was taken as indicated in the exhibits and a report made of the location of the waters appropriated as indicated, and that said report was accepted by the plaintiff company on June 22, 1907. The court further found that on June 8th, 1908, Henry Reitz and Ellen Reitz, his wife, executed and delivered to The Boalsburg Water Company a certain agreement dated June 8th, 1908, and recorded in the office for the recording of deeds, &c., in and for Centre County, on June 12th, 1908, which agreement reads as follows:

"Boalsburg, Pennsylvania, 8th June, 1908. Whereas, The Boalsburg Water Company have located and relo-

cated for the use of the village of Boalsburg a water
right on the property along Spring Creek now belonging
to me and formerly to Isaac Tressler in Galbraith's Gap,
said location being made for the public good by said in-
corporated Boalsburg Water Company, I do now in con-
sideration of payment being made to me for all damages
done to my property in damming and ditching, renew
said premises last given verbally June 21, 1907, to main-
tain said location, giving me in consideration therefor
all the water I may need for my domestic use, it being
further definitely agreed that said location is only for
the use of the public utility known as the Boalsburg
Water Company and no separate sale can be made of
this location without my consent."

On September 16th, 1908, the said Henry Reitz and
Ellen, his wife, executed and delivered their deed to The
Boalsburg Water Company, dated September 16th, 1908,
and recorded September 23rd, 1908, wherein and
whereby the said Henry Reitz and Ellen, his wife, for
and in consideration of the sum of $250 then paid, in
settlement of the damages incurred by the said Henry
Reitz, subject to the agreement recited in the next pre-
ceding request, conveyed and confirmed the premises
mentioned in said deed and the rights therein defined, as
shown by the following language quoted from the said
deed, viz:

"Have granted, bargained, sold, aliened, enfeoffed, re-
leased, conveyed and confirmed, and by these presents
do grant, bargain, sell, alien, enfeoff, release, convey and
confirm, unto the said party of the second part, viz, The
Boalsburg Water Co., their successors and assigns, the
right to take as much water as may be required for their
corporate purposes now existing or hereinafter to be ac-
quired or imposed by law or by the demands of their
customers, from a certain stream in Galbraith's Gap,
Harris Township, Centre County, Pennsylvania, be-
tween what is commonly known as Tussey Mountain on
the west and Bald Knob on the east, together with the

right to occupy and use a certain tract of land two miles east of the town of Boalsburg, containing one acre and thirty-two perches, surveyed for the Boalsburg Water Co. Sept. 4, A. D. 1908, by W. A. Murray, the same being bounded and described approximately as follows as shown by draft recorded herewith: Beginning at a post near an old tram road, extending thence in a direction north 10 degrees and 18 perches to another post near said old tram road, extending thence north 64 degrees east 10 perches to a post near an old race running from a saw mill; extending thence south 15 degrees west 21 perches to a post and thence south 74 degrees west 9 and 5-10 perches to the place of beginning, together with all such ground as may be necessary to build additional reservoir and lay pipes therefrom across said lands to the patrons or customers of said Water Company. It being hereby agreed and understood by and between the parties that this grant is intended to convey unto the party of the second part, subject to the agreement heretofore made, every right that could be acquired by the party of the second part by a condemnation proceeding under the right of eminent domain. To have and to hold the said right together with such premises as are hereinbefore described with all and singular the appurtenances thereto, unto the party of the second part, their successors and assigns, to and for the only proper use, benefit and behoof for the corporate purposes of the said party of the second part, their successors and assigns forever. And the said parties of the first part, for themselves, their heirs, executors and administrators, do by these presents covenant, grant and agree to and with the party of the second part, their successors and assigns, that they, the parties of the first part, their heirs and assigns, all and singular the rights and privileges and premises hereinabove described and granted or mentioned and intended so to be, with the appurtenances necessary for the corporate purposes of the party of the second part, their heirs and assigns, unto the

party of the second part, their successors and assigns, against the said parties of the first part and their heirs and against all and every other person or persons whomsoever lawfully claiming or to claim the same, or any part thereof shall and will by these presents warrant and forever defend."

Other facts are sufficiently stated in the opinion of the Supreme Court.

The court made a decree granting an injunction restraining defendant company from taking any of the waters of Galbraith's Gap Run. Defendant appealed.

*Errors assigned* were various rulings on fact and law and the decree of the court.

*C. LaRue Munson*, of *Candor & Munson*, with him *Glover & Glover* and *N. B. Spangler*, for appellant.— The plaintiff has not taken the stream in controversy under the power of eminent domain, but has, in place thereof, become only a riparian owner: Grove v. Hodges, 55 Pa. 504; Minneapolis & St. Louis R. R. Co. v. Chicago, Milwaukee & St. Paul R. R. Co., 116 Iowa 681 (88 N. W. Repr. 1082); Philadelphia & Reading R. R. Co. v. Pottsville Water Co., 182 Pa. 418; Philipsburg Water Co. v. Citizens Water Co., 189 Pa. 23; Penna. R. R. Co. v. Miller, 112 Pa. 34; Haupt's Appeal, 125 Pa. 211; Lord v. Water Co., 135 Pa. 122; Clark v. Railroad Co., 145 Pa. 438; Cambria, Etc., R. R. Co. v. Blandburg Water Co., 226 Pa. 402.

The plaintiff is not permitted by law to appropriate more water than is necessary for its purposes: Philipsburg Water Co. v. Citizens Water Co., 189 Pa. 23; Mayor, &c., v. Commissioners, 7 Pa. 348; Scranton Gas & Water Co. v. D. L. & W. R. R. Co., 225 Pa. 152; Independent Natural Gas Co. v. Butler Water Co., 210 Pa. 177; Brymer v. Butler Water Co., 172 Pa. 489; Com. v. Russell, 172 Pa. 506; Independent Natural Gas Co. v. Water Co., 210 Pa. 177.

The selection of a water supply will not be dictated by the courts, but its choice is discretionary with the water company: Brymer v. Butler Water Co., 172 Pa. 489; Com. v. Russell, 172 Pa. 506; Biddle v. Wayne Water Works Co., 190 Pa. 94.

*John Blanchard,* with him *Edmund Blanchard,* for appellee.—Minutes are not the only primary evidence of corporate acts even of private business corporations: Bank of U. S. v. Dandridge, 25 U. S. 64; Davidson v. Bridgeport Borough, 8 Conn. 472; Partridge v. Badger, 25 Barbour 146. The same doctrine has been declared by the Supreme Court of Pennsylvania: Harmony Building Assn. v. Goldbeck, 13 W. N. C. 24.

Defective or incomplete records or minutes of municipal corporations, may be explained or supplied by parol testimony: Gearhart v. Dixon, 1 Pa. 224; School Directors v. McBride, 22 Pa. 215; Sidney School Furniture Co. v. School District, 158 Pa. 35; Bohan v. Avoca Borough, 154 Pa. 404; Roland v. School District, 161 Pa. 102, 106; Fisher v. South Williamsport Boro., 1 Pa. Superior Ct. 386.

Indeed it is not always necessary to prove by direct evidence the former existence of written instruments, but such necessary proof may be made by showing facts and circumstances from which the existence of the instrument may be inferred: Bright v. Allan, 203 Pa. 386, 394.

The doctrine of proof by parol of lost or mislaid written instruments of whatever character, is of course elementary: Lost court and public records may thus be proved: Luce v. Snively, 4 Watts 396; Farmers' Bank of Reading v. Gilson, 6 Pa. 51; Miltimore v. Miltimore, 40 Pa. 151; Clark v. Trindle, 52 Pa. 492; Otto v. Trump, 115 Pa. 425; Richards' Appeal, 122 Pa. 547.

Even a will shown to have been in existence at the time of the testator's death and afterwards lost, or if not in existence at that time shown to have been improperly

destroyed without his knowledge, may be proved by parol where the usual ground for the introduction of secondary evidence has been laid: Foster's Appeal, 87 Pa. 67 (1878).

By virtue of its location and appropriation alone, irrespective of the subsequent settlement with Reitz, although thereby further fortified, the plaintiff acquired its water rights and its rights in its water site, not as a riparian owner but by exercise of its right of eminent domain: Williamsport & North Branch R. R. Co. v. Philadelphia & Erie R. R. Co., 141 Pa. 407; Johnston v. Callery, 173 Pa. 129; S. C. 184 Pa. 146; Haupt's Appeal, 125 Pa. 211; Philadelphia & Reading R. R. Co. v. Water Co., 182 Pa. 418.

The extent of appropriation on Galbraith's Gap Run is in the discretion of the plaintiff because of the plaintiff's prior condemnation. The defendant has no right of condemnation on this stream, because of the absence of countervailing necessity: Biddle v. Wayne Water Works Co., 190 Pa. 94; Brymer v. Butler Water Co., 172 Pa. 489; Com. v. Russell, 172 Pa. 506; Pittsburgh Junction Railroad Company's App., 122 Pa. 511; Pitts. Ft. Wayne & Chicago Ry. Co. v. Peet, 152 Pa. 488; Scranton Gas and Water Co. v. Coal and Iron Co., 192 Pa. 80; Scranton Gas and Water Co. v. D. L. & W. R. R. Co., 225 Pa. 152; Miller v. Windsor Water Co., 148 Pa. 429; Penna. R. R. Co.'s App., 93 Pa. 150; Mayor, &c., v. Commissioners, 7 Pa. 348.

A franchise is property, and, as such, may be taken by a corporation having the right of eminent domain, but in favor of such right there can be no implication unless it arises from a necessity so absolute that, without it, the grant itself will be defeated. It must, also, be a necessity that arises from the very nature of things, over which the corporation has no control; it must not be a necessity created by the company itself for its own convenience or for the sake of economy: Penna. R. R. Co.'s App., 93 Pa. 150; Packer v. Railroad Co., 19 Pa. 211;

Penna. R. R. Co.'s App., 115 Pa. 514; Groff's App., 128
Pa. 621; s. c. 144 Pa. 150; Scranton Gas & Water Co. v.
Northern Coal & Iron Co., 192 Pa. 80; Scranton Gas &
Water Co. v. Northern Coal & Iron Co., 145 Pa. 21;
South Western State Normal School case, 213 Pa. 244;
Philadelphia, &c., St. Ry. Co.'s Petition, 203 Pa. 354;
Pittsburgh Junction R. R. Co.'s App., 122 Pa. 511.


OPINION BY MR. JUSTICE ELKIN, March 31, 1913:

This bill was filed to restrain appellant water com-
pany from diverting or taking the waters of Galbraith's
Gap Run so as to change or lessen the volume and flow of
the stream for the purpose of supplying the same to the
public; and from attempting to condemn by right of emi-
nent domain the site, location and waters theretofore
appropriated by the complaining company for a public
use. The first contention of appellant is that the Boals-
burg company did not condemn the waters of the stream
in question under the right of eminent domain, but that
it acquired whatever rights it possesses by deed from
the riparian owner. It is therefore argued with much
force that the complaining company only occupies the
position of a riparian owner and can assert no other or
different right. The learned chancellor in the court
below found against appellant on this question both as
to the facts and the law. After a careful review of the
record we have reached the same conclusion. We deem
the corporate action of the Boalsburg company in 1907
a sufficient compliance with the statute to constitute a
condemnation of the waters of the stream, when fol-
lowed by a location upon the ground and the payment of
damages to the riparian owner. Indeed, accepting the
findings of the learned chancellor as the proper ascer-
tainment of the facts, there was a sufficient compliance
with every requirement of the statute. It is argued,
however, that in this respect the chancellor erred be-
cause the proofs in contemplation of law did not war-
rant the findings. This argument is based on the ground

that the minutes of a corporation undertaking to con-
demn under right of eminent domain must show that
proper corporate action was taken and proper resolu-
tions were passed, condemning the waters and directing
the location to be made upon the ground; and that the
minutes are the only competent evidence to prove the
performance of these corporate acts. Of course, there
must be corporate action, which means the adoption of
resolutions to condemn without which there can be no
adverse taking of the property of another. But when
corporate action is taken as the law requires, if for any
reason the minutes which should contain a proper record
of that corporate action, are lost, destroyed or muti-
lated, it is competent to prove by those present at the
meeting what action was taken. It sometimes happens
that by inadvertence or otherwise no minute was made
of what occurred at the meeting although proper action
was taken, but in such a case the right to prove by parol
what was done cannot be denied. As we read our own
cases, it is settled law that where an ordinance or reso-
lution is actually passed by a corporation, and through
inadvertence or mistake such resolution is not recorded
in the minutes, the fact of its passage may be proved by
the testimony of those present at the meeting: Har-
mony Building Association v. Goldbeck, 13 W. N. C. 24;
Bohan v. Avoca Borough, 154 Pa. 404; Sidney School
Furniture Co. v. School District, 156 Pa. 351; Roland
v. School District, 161 Pa. 102. Certainly if it be com-
petent to prove that no minute was made in the first in-
stance, it follows that if a proper minute was made at
the time and subsequently the minute book was lost, it
is competent to prove what was recorded in the minute
book, or what should have been recorded there as the re-
sult of the corporate action. This is simply an applica-
tion of elementary rules of evidence. The best evidence
that can be produced under the circumstances is al-
ways required. If the original instrument, or the pri-
mary evidence, cannot be produced and the proper

grounds are laid, secondary evidence may be introduced. We see no reason for excepting the present case from this elementary rule. The testimony offered at the trial showed conclusively what the resolutions to condemn contained and what the corporate action was. This was followed by a location upon the ground and negotiations for the settlement of damages. All this was done in the exercise of the right of eminent domain, and we think it was sufficient to protect the rights of the first condemning corporation.

It is further very earnestly contended by appellant that the proceedings to condemn were abandoned by a settlement subsequently made with the riparian owner which resulted in the execution and delivery of a deed containing a grant of the rights claimed by the water company in the condemnation proceedings. The contention is that under the deed the Boalsburg Company simply took the rights of the riparian owner who made the conveyance. The learned chancellor decided this question against appellant and under the facts we think it was properly decided. The deed itself shows that the conveyance was made as a result of the negotiations between the parties on the question of damages after corporate action to condemn had been taken. The intention of the parties is clearly expressed in the following clause of the deed: "It being hereby agreed and understood by and between the parties that this grant is intended to convey unto the party of the second part, subject to the agreement heretofore made (that is the agreement relating to the settlement of damages) every right that could be acquired by the party of the second part by condemnation proceeding under the right of eminent domain." Other recitals tend to show the same purpose and intention. There is nothing in the entire record to show that the Boalsburg company abandoned its claim to the waters of the stream under the right of eminent domain. Every act of the company from the date of its incorporation to the present time shows an

intention to use the waters of the stream in question for the purpose of supplying the public with water. As we view it the settlement of damages and the acceptance of the deed from the riparian owner is in aid of this purpose. The statute which gives the right to condemn clearly contemplates an effort on the part of the condemning company to amicably settle the question of damages with the riparian owner. Rights conferred under the power of eminent domain may be acquired by an adverse condemnation proceeding, but they may likewise be acquired after proper corporate action has been taken directing the location, by an equivalent agreement between the parties: Hendler v. L. V. R. R. Co., 209 Pa. 256. It is the duty of a corporation desiring to condemn land for a public use after proper corporate action has been taken to make an effort to settle the question of damages with the land owner before proceeding adversely. We can see no reason why a corporation having the power of eminent domain, and in the assertion of that power makes an effort to amicably settle the question of damages with a land owner as the law contemplates, should be denied the rights which accrue to a condemning company because it succeeds in doing what the law requires, that is, settle the question of damages with the land owner. We, therefore, conclude that appellee acquired its rights under the power of eminent domain and not simply as a purchaser from the riparian owner with the usual incidents of ownership in the fee.

It is further contended that the appellee company has neither the right nor the power to condemn the waters of the stream in question beyond its necessities in furnishing the inhabitants of Boalsburg with an adequate supply of water for domestic and manufacturing purposes and for fire protection—this being the purpose for which the company was incorporated. The power to condemn waters was conferred by the Act of May 16, 1889, P. L. 226, which was an amendment to the Act

of 1874. This power is expressed in the following language: "And it shall have power to appropriate so much of the waters from the rivers, creeks, canal water rights and easements, within or without the limits of the city, borough or place in which said company may by its charter be located, as may be necessary for its purposes." It must be conceded that the legislature limited the power to condemn the waters of a stream by a water company to so much "as may be necessary for its purposes." But how shall the question of necessity be determined and by whom? The condemning company clearly has the right to condemn so much water as may be necessary not only for present purposes but for future needs. As applied to railroad companies this has been decided many times and the same rule should prevail as to water companies, except as it may be modified by the character of the thing condemned and the necessities of the use. The condemning company must determine in the first instance what its necessities are and what volume of water should be condemned for its corporate purposes. The assessment of damages to lower riparian owners depends upon the amount of water condemned. If all or a large portion of the waters of a stream are condemned the damage to riparian owners might be very great; if only a small portion of the entire volume be condemned, the damages might be very small. It is therefore incumbent on the condemning company to decide in the first instance the amount of water deemed necessary to be condemned for its use. This does not mean that the act of the water company in this respect is final and conclusive upon all parties. Indeed, the very opposite is true, because the question of necessity may always be inquired into by a proper proceeding in the courts. But when a water company by proper corporate action has decided how much water is necessary for its present and future uses and has followed this up by a condemnation of the amount of water deemed necessary for its corporate pur-

poses, it thus acquires a prima facie right to the water so condemned. A junior company claiming the right to condemn a portion of the same waters must show that the first condemning company has appropriated more water than is necessary for its present and future needs. The first condemning company has the superior right and the burden of showing that it has condemned more water than its necessities require is on the junior company which undertakes to dispute that right. This is especially true when the waters condemned are those of a small mountain stream as in the present controversy. In the condemnation of large streams of water a very different question is presented. Courts might very properly hesitate to say that the entire flow of a small mountain run was more than the necessities of the first condemning company required, while on the other hand the presumption would be that no company would need all the waters of a river, or other large stream, for its corporate purposes. We fully agree with learned counsel for appellant that the legislature never intended to confer upon any water company the power to condemn and divert all the waters of our large public streams, and that the power to condemn is limited to the necessities of the public use for which the appropriation is made. Any other view might lead to disastrous results to the people of the Commonwealth. But this argument applies with equal force against two or more companies which undertake to condemn all the waters of a public stream as it does to a single company attempting to do the same thing. In the present case appellant undertook to condemn all the waters of Galbraith's Gap Run, the very thing it contends appellee did not have the power to do. All this was attempted after the Boalsburg company made its condemnation and secured whatever rights the law gave it. Surely it was not within the power of appellant to condemn all the waters of the stream which already had been appropriated by appellee. Again, it must not be over-

looked, that this is a proceeding in a court of equity, and in determining the right of the parties it is proper for such a court to inquire into the needs of each company. The question of necessity applies to appellant as well as to appellee. It was, therefore, proper for the court below to inquire whether appellant was attempting to condemn more water than its necessities required, and incidental to this inquiry whether the facts warranted the invasion by the second company of the site and location of the first condemning company. The learned court below took this view of the case and permitted testimony to be introduced along these lines. We are not prepared to say that all of the testimony thus introduced was relevant or competent, but without reference to the competency of some of the testimony, the conclusion reached in our opinion was fully warranted. The equities are with the Boalsburg company, the first to condemn the waters of the stream in question, and the very able argument of learned counsel for appellant has failed to convince us that the prima facie rights of the first condemning company should not prevail in the present controversy. What appellant attempted to do was in disregard of the prima facie rights of appellee and as we view the case this should not be permitted. We, therefore, conclude upon the record here presented that the learned court below properly exercised its power in restraining appellant from condemning the waters of Galbraith's Gap Run and from otherwise interfering with the rights of appellee.

Decree affirmed at cost of appellant.