# McAboy's Appeal.

1. The Councils of the City of Pittsburgh, by ordinance passed in 1870, authorized the P. & C. Railroad Company to build a short elevated railroad, from its terminus at the foot of Grant street on the Monongahela River, along the river front, over that portion of the highway known as "Monongahela Wharf," between Grant street and Smithfield street in said city. Said ordinance was passed in pursuance of an Act of Assembly approved April 15th, 1869, entitled "An Act to authorize the Select and Common Councils of the City of Pittsburgh to vacate streets and alleys in said city." In a suit in equity by a property owner to enjoin the building of said elevated railroad:

*Held*, that said Act of 1869 did not warrant the passage of said ordinance, or the building of the railroad.

*Held*, however, that a certain Act of April 1st, 1868 (P. L. 547), which authorized said P. & C. Railroad Company to construct "branches of railroad," with the same privileges as were conferred by the charters in regard to its main line, was a legislative sanction for said ordinance, and for the construction of said elevated road, which was a "branch of railroad" within the meaning of said Act.

*Held*, further, that if a warrant for said ordinance were otherwise wanting, it would be found in the subsequent general Act of June 4th, 1874 (P. L. 282), which authorized and ratified contracts between cities and railroad companies for the re-location, changing or elevating of railroads within such cities.

2. The definition of a "branch" railroad, under said Act of 1868, does not depend upon either its length or direction. A branch of a railroad is a section of railroad, which may be an offshoot from the main road, or a direct extension from the terminus. The necessity for such branches, and their direction, rest in the will and discretion of the president and directors of the corporation by which they are to be constructed.

Western Pennsylvania R.R. Co.'s Appeal, 3 Out. 155, approved.

November 3d, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY and CLARK, JJ. STERRETT and GREEN, JJ., absent.

APPEAL from the Court of Common Pleas No. 2, of *Allegheny county:* In Equity. Of October and November Term, 1884, No. 119.

Appeal of Leland R. McAboy and Mary Ann his wife, in her right, and Robert Woods and Sarah L., his wife in her right, from a decree of said court dismissing a bill in equity filed by them against the Pittsburgh & Connellsville Railroad Company, and Robert Henderson, contractor, and the City of Pittsburgh, to restrain the construction by said railroad company of an extension of their railroad, and of a passenger depot, &c., in front of the complainant's premises on that part of Water street known as the Monongahela Wharf, between Grant street and Smithfield street.

After answer filed, the parties filed an "Agreed statement

of Facts," in which the following facts, in substance, were set forth:—

Water street in the City of Pittsburgh as originally laid out, extended along the river front of the Monongahela River (which there runs east and west), and included all the land between a certain line parallel with the river and low water mark. In pursuance of an ordinance of said city passed in 1836, the northernmost part of said land composing Water street was graded to a level, and paved, for use as the street proper, of the width of 35 (now 47) feet, measured from the north line thereof; and the remainder of said land (divided from the street proper by a line known as the "Wharf Line"), 227 feet in width, was graded at a regular descending grade of 16 feet to the 100 feet from the "wharf line" to the line of low water mark, and uniformly paved—this portion, extending along the immediate river front, is known as "Monongahela Wharf," and is used by steamers and boats as a landing place, and by Act of April 15th, 1851 (P. L. 708), said Monongahela Wharf was declared to be a public landing, under the control of the city councils.

The plaintiffs own a house and lot of ground situate on the north side of Water street, between Grant and Smithfield streets—both these streets run north and south into Water street.

The terminus of the Pittsburgh and Connellsville Railroad, as provided in its charter, has heretofore been at the foot of Grant street abutting on the Monongahela River. Said railroad company has begun the construction of an extension westwardly from its terminus, consisting of an elevated double track railroad 50 feet in width, and proposes to extend the same westwardly along, upon and over said Monongahela Wharf between Grant street and Smithfield street, in front of plaintiff's property, and to construct a passenger station near the abutment of the Monongahela bridge (Smithfield street continued). The distance between the line of plaintiff's lot to the nearest point of said proposed structure is 143 feet; the distance from the "wharf line" to the structure is 96 feet, and the distance from plaintiff's building to the "log line" or low water line, is 274 feet.

The general features of the case are illustrated in the accompanying Plan, as shown on p. 550.

It was admitted, for the purposes of this case, that the proposed extension and structures would cause damage to the plaintiff's property.

The defendant company claims the right to construct said works, under its charter and supplements thereto, and espe-

MONONGAHELA RIVER

cially by virtue of the following Act of Assembly and ordinance of city councils, viz.:

(1) Charter of said company by Act of April 3d, 1837, investing them with the right of eminent domain, and the several supplements thereto.

(2) Act of April 15th, 1869, entitled "An Act to authorize Select and Common Councils of the city of Pittsburgh to vacate streets and alleys in said city," and providing as follows:—

"Section 1. That the select and common councils of the city of Pittsburgh be and are hereby granted full power and authority to make and enter into a contract or contracts with the Pennsylvania Railroad Company, the Pittsburgh, Ft. Wayne & Chicago Railway Company, and the Allegheny Valley Railroad Company, or either of them, or Pittsburgh & Connellsville Railroad Company, whereby public travel may be rendered more safe in said city, and the depot property of said companies, or either of them, may be enlarged and made to afford greater facilities for the receipt and shipment of merchandise, and the general comfort of the traveling public.

"Section 2. That said councils, for the purpose of enabling said contract or contracts to be carried out, shall have and are

hereby given authority to vacate and close up the whole or any portion of any streets or alleys in said city, and generally to do such acts and pass such ordinances as they deem expedient for the purposes aforesaid; *Provided, however,* That no street or alley, or portion of the same, as aforesaid, shall be vacated or closed up, unless the said companies, or either of them, shall first acquire, by purchase or otherwise, the property fronting on both sides of the street or alley, or such portions thereof that may be vacated or closed up." (P. L. 965).

(3) Ordinance of the Select and Common Councils of the city of Pittsburgh passed June 20th, 1870, entitled "An Ordinance authorizing the Pittsburgh & Connellsville Railroad Company to erect a Passenger House or Depot upon a certain portion of the Monongahela Wharf," and providing—

"Section 1. That the Pittsburgh & Connellsville Railroad Company be and they are hereby authorized to erect a Passenger House or Depot, with two tracks and their accompanying platforms, upon that portion of the Monongahela Wharf which lies between the eastern side of Smithfield street and the eastern side of Grant street. *Provided however*, and the authority hereby granted is only to take effect upon condition that the structure of said Depot shall be supported by piers composed of rows of Iron Pillars founded on masonry not to exceed two feet in thickness; said piers to be longitudinally one hundred feet apart for a distance of four hundred feet from the east side of Grant street, and thence for a distance of about sixty feet to be not less than twenty feet apart lengthwise of the building, and that thence for a distance of about seventy-six feet to the east side of Smithfield street; and the said Pittsburgh & Connellsville Railroad Company shall have the right to extend the front of the Suspension Bridge abutment that distance (seventy-six feet) by a wall of masonry, and thence by a similar wall at right angles to the first towards Water street, said walls to enclose a space to be filled in and paved as a Carriage Drive, leaving a sufficient width in front of Water street for the thoroughfare to the River; and that the said Company make their Passenger House fronting on said Carriage Drive of two stories in height, not exceeding seventy-five feet in length; the remainder of said building to be one story. The under side of the structure supporting said house to be not less than fourteen feet in clear height from the surface of the wharf on the upper side of the house at the east side of Grant street, and not less than nineteen feet at the distance of four hundred feet therefrom aforesaid; and *Provided, also,* that the strip or

portion of the wharf covered by said structure shall not exceed Fifty feet (50 feet) in width, and that the roof of said building shall be composed of iron or slate, and that in other respects due precautions be taken against fire.

"Section 2. That the Railroad Company is also required to provide stages to facilitate the discharge of river freights from boats when the height of water and the position of the tracks hereby authorized to be built shall render the same necessary.

"Section 3. That for and in consideration of the privileges herein granted the said Railroad Company shall be held and bound to pay annually to the City Treasurer for the use of the city the sum of Three Thousand Dollars, in semi-annual payments. The first of said payments to be made at the end of nine months from the time the said company shall begin work on the ground. That this ordinance shall be held to grant such rights as the city of Pittsburgh may legally confer and no more."

The defendant company accepted the terms of said ordinance. If the court shall be of the opinion that the said defendant company has the legal right to construct the said passenger house, depot and tracks in the manner proposed, against the will of plaintiffs, and with or without making compensation to them, then, a decree to be entered in favor of the defendants, dismissing the bill; otherwise, decree to be entered in favor of the plaintiffs restraining the defendant company from proceeding with the construction of the proposed improvement; reserving the right to either party of appeal to the Supreme Court; also reserving to the plaintiffs all remedies for the assessment and collection of such damages as they may be entitled to receive.

At the argument, counsel for the railroad company, in addition to the Act of April 15th, 1869, above quoted, relied on the Act of April 1st, 1868 (P. L. 547), which authorized said Pittsburgh and Connellsville Railroad Company, at any time thereafter, "to survey, locate and construct one or more branches of railroad, extending from any point or points in any county through or in which the said main line passes, or in any adjoining county, with a view to the development of the territory within said limits, and furnishing an outlet for its productions. . . . . . And the said company shall have the same rights, privileges and powers, in respect to the location, construction and management of each and all of said branches, and the operating thereof, as are conferred by their charter, and all supplements thereto, in regard to its main line of railroad."

Also, the Act of June 9th, 1874 (P. L. 282), which provides:—

Section 1. *Be it enacted, &c.*, That the proper authorities of any county, city, town, or township of this State respectively, be and they are hereby authorized and empowered to enter into contracts with any of the railroad companies whose roads enter their limits, respectively, whereby said railroad companies may *re-locate, change or elevate* their railroads within said limits or either of them, in such manner as in the judgment of such authorities, respectively, may be best adapted to secure the safety of lives and property, and promote the interest of said county, city, town or township, and for that purpose the said authorities shall have power to do all such acts as may be necessary and proper to effectually carry out such contracts, and any such contracts made by any railroad company or companies, as aforesaid, with said authorities, or either of them, are hereby fully ratified and confirmed. Provided, &c.

The cause was argued before EWING, P. J., and WHITE, J., and the following opinion and decree was afterwards filed:

The original charter of the defendant company locates its western terminus at the foot of Grant street, Pittsburgh, on the Monongahela river. Then and now from Grant street to the junction of the Monongahela river, with the Allegheny, a strip of land about 250 feet in width, was and is used as a public street and wharf, dedicated to the use of the lot holders and the public by the proprietors of the town, by the city councils and by Act of Assembly.

The defendant company seeks to extend the terminus of its road to Smithfield street, by extending its tracks across Grant street and Cherry alley, along the public wharf, and building a depot on the wharf between Cherry alley and Smithfield street.

We agree that this proposed extension is in no sense a branch road, such as is contemplated in the Act of Assembly, approved 1st of April, 1868. (P. L., page 547.)

It is claimed by the defendant company that the Act of Assembly, approved 15th of April, 1869, (P. L., page 965,) entitled, " an Act to authorize the Select and Common Councils of the city of Pittsburgh, to vacate streets and alleys in said city," and the ordinance of said councils passed 20th June, 1870, set out in the statement of facts, is sufficient authority for the extension of defendant's road and its occupancy of the wharf therefor.

On this vital question the court is divided in opinion. The necessary result of this division is that the bill must be dismissed.

[McAboy's Appeal.]

And now, 23d June, 1884, after argument of counsel and upon consideration, (the court being divided in opinion,) the bill of complaint is dismissed at costs of complainants.

PER CURIAM.

The complainants took this appeal, assigning for error the above decree.

*John S. Ferguson*, for the appellants.—It is settled that a railroad company cannot occupy with its tracks a public street or highway in a city, without legislative sanction; the city alone cannot grant it such power: Phillips *v.* Dunkirk R. R. Co., 78 Pa. St. 177; Atty. Gen. *v.* R. R. Co., 32 Leg. Int. 238; Phila. and Trenton R. R. Co. Case, 6 Wh. 25. The Act of April 15th, 1869, does not authorize councils to grant, or the company to use, the highway as they propose to do. That Act, as shown by its title and its enacting clauses, authorizes councils to close up streets or alleys and contract with the company for the enlarging of their depot facilities, provided the company purchases all the property fronting on both sides of such vacated streets, whereby public travel may be rendered more safe. But it does not authorize the use of the wharf or street as here proposed. Such an occupation would not be the abolition of a street, 'but a monopoly of it. Besides *wharves* were not within the contemplation of the Act; wharves do not have " property fronting on both sides," and no provision is made for compensation to those whose property abuts on them.

*George Shiras, Jr.*, (*Johns McCleave* with him), for the appellees.—A wharf is a highway, and the argument that it is not a street is a mere play upon words; names cannot alter things; in fact the Monongahela wharf always was, and still is a part of Water street, and it is not the less a street because it has the river as a boundary. This has been judicially determined: Com'th *v.* McDonald, 16 S. & R. 390; Barclay *v.* Howell, 6 Pet. 498; see also Barney *v.* Keokuk, 94 U. S. 324; Cook *v.* Burlington, 36 Iowa 357; N. O. & C. R. R. Co. *v.* New Orleans, 26 La. Ann. 517. The Act of 1869 is a full warrant for the grant by councils. In its first section it provides that councils may contract with the railroad company whereby its depot property " may be enlarged and made to afford greater facilities for the receipt and shipment of merchandize and the general comfort of the travelling public." In its second section, councils are given authority not only to vacate streets, but " generally to do such acts and pass such ordinances as they deem expedient for the purposes aforesaid."

We contend, further, that if there were no previous legislative authority for the passage of the said ordinance, yet, its enactment was ratified and confirmed by the Act of June 9th, 1874. (P. L. 282.)

We submit, also, that this extension of the main line beyond its original terminus is a "branch" railroad within the Act of April 1st, 1868. Such was the construction of a similar Act in Western Penna. R. R. Co.'s Appeal, 3 Out. 155. A similar Act was similarly construed in Pittsburgh v. Penna. R. R. Co., 48 Pa. St. 359. The fixing of the termini of the branch is entirely within the discretion of the president and managers of the company: Getz & Co.'s Appeal, 10 W. N. C. 453; C. & P. R. R. Co. v. Speer, 56 Pa. St. 332. And if the terminus *ad quem* of the branch is so fixed as to make it necessary or reasonably convenient in order to reach it, to build the branch along or upon a public highway, it may be done: Pittsburgh v. P. R. R. Co. supra; Black v. Phila. & Reading R. R. Co., 58 Pa. St. 252; C. & P. R. R. Co. v. Speer, supra; Com'th v. Erie & N. E. R. R., 27 Pa. St. 339; Getz & Co.'s Appeal, supra.

It is insisted that this elevated road from Grant street to Smithfield street is not a "branch" within the meaning of the Act of April 1st, 1868, but just why it is not has never been explained. Is it because it is not long enough? If so, how much longer down the river must we run it in order to make it a branch? Would it be a branch if it were a mile long, and not a branch if it is five hundred feet long. Who has established *length* as a criterion of a branch railroad? Is it not a branch because it is elevated? Who has said that a branch must be on the surface of the ground? Is it not a branch because it extends from the present terminus of our main line to and into a new passenger depot? Why must a branch not extend to a new passenger station erected for the accommodation of the public traveling by the old main line? In Getz's Appeal, supra, the branch extended from the main line to a private iron mill. Does the purpose to reach a private factory make it a branch, and to reach a public depot, make it not a branch? It was said in the court below it could not be a "branch," because it is proposed to cover the tracks by a shed. What legal principle requires a branch railroad to be exposed to the weather? In short, why should a "branch" be anything else than just precisely what this road will be from Grant street to Smithfield street? No valid reason can be assigned why this railroad should not come fairly within the intendment of the Act of April 1st, 1868, as a branch railroad.

Mr. Justice GORDON delivered the opinion of the court, January 5th, 1885.

It seems from the statement of facts which has been submitted to us, that the Pittsburgh and Connellsville 'Railroad Company, acting under and in accordance with an ordinance of the common and select councils of the city of Pittsburgh, is about to extend the line of its road from its present station on the eastern side of Grant street, along and upon the Monongahela wharf, to the eastern side of Smithfield street. In view of the rapidly increasing traffic of this road, it has been deemed advisable, both by the company and the city councils, that it should be thus extended, and a new passenger station built over the said wharf, yet in such a manner, nevertheless, as not to obstruct the passage of ordinary vehicles to and from the river. To prevent this the appellants, who are owners of property fronting upon Water street and this public landing, filed the bill which gives rise to the present controversy. It is admitted that the proposed work will result in damage, at least of an incidental character, to the complainants, hence, their right to maintain this bill, in the absence of a superior or countervailing right on part of the defendant, is not disputed. The question then is: under what authority does the Railroad Company assume to occupy the public wharf or thoroughfare in question? The answer of the appellee is, first; that such authority is conferred upon it by the ordinance above mentioned, and by the Act of the 15th of April, 1869, which empowers the city councils to contract with the three railroad companies therein mentioned, or either of them, for the vacation and closing up of the whole or any portion of any street or alley in the said city. But we do not agree with the proposition that this Act at all applies to the case in hand. Our dissent is not founded upon the objection that the ground in question may not be embraced under the term "street," but because the design proposed does not require the vacation or closing up of the whole or any part of a street, but simply the occupation in common with the public of part of a city highway called the "Monongahela Wharf." This no more requires vacation than did the occupation of Liberty street by the railroad tracks now in use upon it. Neither is it necessary in order to warrant the action of the city councils, and the proposed occupancy by the defendant, that the latter should first acquire the property adjacent to the intended extension. The Act of 1869 does not, therefore, sustain the assumption of the appellee, and had it nothing more substantial upon which to ground its claim there could be no place found for it in a court of equity.

It is urged, however, secondly, that, abandoning the defence

based on the Act of 1869, the decree of the court may be supported under and by force of the Act of April 1st, 1868, by which the Pittsburgh and Connellsville Railroad Company is authorized "at any time hereafter, to survey, locate and construct one or more branches of railroad, extending from any point or points in any county through or in which the said main line passes, or in any adjoining county, with a view to the development of the territory within said limits, and furnishing an outlet for its productions," and that if a warrant for the ordinance of June 20th, 1870, is otherwise wanting, it is to be found in the Act of June 9th, 1874.

The position here assumed is undoubtedly correct if the proposed extension is to be regarded as a branch of the appellee's main improvement. This company must be regarded as the *locum tenens* of the state, and the legislature having conferred upon it the branching power, it may do just what the commonwealth could do under like circumstances; that is, when necessary for the proper execution of such power, it may occupy the public highways: Cleveland & Pittsburgh Railroad Co. *v.* Speer, 6 P. F. S. 325.

And so, from the language held in a case similar to the one in hand, Mayor, &c. of Pittsburgh *v.* The Pennsylvania Railroad Co., 12 Wr. 355, it would seem that the necessity for such branches, and their direction rest in the will and discretion of the president and directors of the corporation by which they are to be constructed.

As to the Act of 1874, though it may be regarded as conferring no new rights upon railroad companies having, as in the present instance, the branching power independently of this statute, yet, even as to them it may be treated as a police regulation empowering the public authorities, for the safety of the people, to control the action of such companies in the extension or re-location of their roads, and the application of the statute being thus general, there is no doubt but that it effects a ratification of the previous contract between the city and the appellee. We cannot, however, see how this becomes a material question in the present controversy; for if this corporation has the power to extend its line over the wharf, then the contract between it and the city authorities is a matter which concerns themselves only, and with which third parties cannot be allowed to interfere.

There remains then, but the single question: is the proposed extension a branch within the meaning of the Act? We think it is. We cannot agree that the definition of such a structure shall depend either upon its length or direction. If the projection of a completed road for one square is too short for a branch, then, what distance will be required to

allow the use of this term. The question involves in itself its own absurdity. The mistake is found in giving too narrow a definition to the word "branch." According to Worcester it may mean, "any distinct article or portion; a section; a subdivision." But if for the word "branch" we use "section" the subject under discussion is relieved of all possible obscurity. In like manner are we delivered from hesitancy in the matter of direction; that is, whether we are to regard the word "branch" as merely an offshoot of the main road, or whether we may apply it to a direct extension from the terminus, since the substitution of the word "section" dissipates anything like doubt on this score. Moreover the case of the Western Pennsylvania Railroad Company's Appeal 3 Out. 155, is in principle so like the case in hand that it may be regarded as having settled the question we are now considering. This case was ruled under the 9th section of the Act of April 4th, 1868, the language of which is, in all material particulars, similar to the Act conferring branching powers upon the defendant corporation. In commenting upon this part of the statute, Mr. Justice STERRETT, who delivered the opinion of this court in the case cited, says: "The main contention of the appellant was that the Pittsburgh and Western Railroad Company has no authority to extend its road west of the eastern line of Sandusky street, because its predecessors in title had located, marked, and determined the route of the Road, and by accepting the ordinance granting the right of way to the east line of Sandusky street, had selected and finally fixed that part of its western terminus; and because the appellee had completed the road to that point and there fixed its terminal depot. . . . . . The branching power given by the 9th section of the Act of 1868, is sufficiently broad and comprehensive to authorize the construction of the road in question as a branch, and there is no valid reason why it may not be constructed from the terminus as well as from any other point of the main line of the road."

As the legal principles here stated are based on facts very like those that are involved in the present controversy, we may regard the case as a definitive determination of the contention in hand in favor of the appellee.

The decree of the court below is affirmed and the appeal dismissed at costs of appellants.