# Borough of Bethlehem, Appellant, *v.* Lehigh and New England Railroad Company.

*Railroads — Municipalitiees — Branch line — Right to construct without municipal consent—Equity—Injunction—Refusal.*

1. A line of railroad track extended from the main line of a railroad company to the plant of a manufacturing company is a branch line within the meaning of Section 9 of the Act of April 4, 1868, P. L. 62, authorizing railroad companies incorporated under the act to construct such branches from its main line as it may deem necessary.

2. Where a railroad company having obtained the consent of the municipal authorities of a borough to enter the borough, constructed such branch line across a public street without having first obtained the consent of the municipal authorities, and the municipality brought a bill in equity to restrain defendant from using such branch line and to compel it to remove its tracks from the street, the bill was properly dismissed.

Argued Jan. 31, 1916.   Appeal, No. 201, Jan. T., 1915, by the Borough of Bethlehem, from decree of C. P. Lehigh Co., April T., 1914, No. 1, in equity, dismissing bill in equity for an injunction, in case of the Borough of Bethlehem and Oscar H. Rauch v. Lehigh and New England Railroad Company and James A. Eberts.   Before BROWN, C. J., POTTER, STEWART, FRAZER and WALLING, JJ.   Affirmed.

Bill in equity for an injunction.   Before GROMAN; P. J.

The opinion of the Supreme Court states the facts.

The court on final hearing dismissed the bill.   The Borough of Bethlehem appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law, and the decree of the court.

*George R. Booth,* for appellant.—The track com-

plained of is a private switch for use of a private owner, laid largely at his expense and subject to removal when his necessity ceases. For this reason, there could be no lawful right to build this switch in the public street of the borough without municipal consent.

The entry upon the street was in violation of the Railroad Act of April 4, 1868, Section 12, P. L. 62: Pittsburgh Railways Co. v. Pittsburgh, 226 Pa. 498; Pittsburgh v. Pittsburgh, Carnegie & Western R. R. Co., 205 Pa. 13.

*R. J. Butz,* of *Butz & Rupp,* with him *William Jay Turner,* for appellee.—The defendant was authorized by its charter to cross the road with the branch line.

OPINION BY MR. JUSTICE STEWART, April 17, 1916:

The Lehigh and New England Railroad Company is a composite corporation made up of several railroad companies, which agreeably to law have been merged into it along with their respective rights and franchises. It is not necessary to distinguish these further than to say that one of them was the Bethlehem Railroad Company chartered by and under an act of assembly approved May 1, 1862, P. L. 586. To a provision in this charter we shall have occasion to refer later. The defendant consolidated company was chartered under the general railroad law approved April 4, 1868, P. L. 62. It enjoys, therefore, the rights and privileges that are conferred by the Act of April 4, 1868, on such corporations, as well as those derived through the merger of its constituents and such as are given by the general railroad Act of February 19, 1849, P. L. 79, subject of course to the restrictions contained. It maintains and operates a line of railroad which extends through the Borough of Bethlehem. On December 8, 1913, this company constructed a single track of about 100 feet in length from a point upon its main line within the Borough of Bethlehem across a public street known as Conestoga street in said

borough, to the plant of the Lehigh Valley Chemical Company. Not only was this done without the consent of the borough to such use and occupancy of Conestoga street, but in disregard of express notice given by the street commissioners of the borough that such occupancy of the street was illegal, accompanied with the demand that the track be removed from the street. On 12th January, 1914, the borough authorities filed the present bill praying for an injunction restraining the railroad company from using and occupying the said track with its cars, and that the company be required to remove its track from said street. Upon final hearing the bill was dismissed. The appeal brings before us the single question of the right of the railroad company to occupy and use Conestoga street by crossing the same with its tracks without first having obtained consent of the municipal authorities so to do.

It is first of all necessary to determine just what this line of track that the company has built and of which the borough complains, is. It has been variously denominated in this proceeding. The chancellor in his findings and conclusions speaks of it as a siding; counsel for the railroad company speak of it as a lateral road, while counsel for appellant argues that it is a private switch; and much confusion and wasted effort has resulted from this failure to observe proper distinctions. It is certainly not a siding, and just as certainly it is not a switch. Construing literally the term "lateral track," the term would be sufficiently comprehensive to include such a track as we have here, and it has most frequently been used in legislative enactments in this wider sense, as for instance in the general railroad Act of 1849 where, in the tenth section, the right is given to enter upon private lands and thereupon to lay down, erect, construct and establish a railroad with one or more tracks with such branches or lateral roads as may be specifically authorized. Here manifestly the term "lateral" was used interchangeably with the word branch,

and not in the narrow sense given it in the Act of May 5, 1832, P. L. 501, which confers on owners of land, mills, quarries, coal mines, lime kilns or other real estate in the vicinity of railroads, canals or slack water navigation, the right to condemn land and to construct a railroad in and upon such routes as they may select, from such mills, quarry, coal mine, lime kiln or other real estate to the place of intersection with such railroad or canals. Understood as here applied and used a lateral road is something distinct and separate from a railroad, and the right to construct such a road has never been extended to railroad companies. It is only to such roads, as are provided for in the Act of 1832 that the term lateral strictly and properly applies where distinction is sought to be made between the different kinds of railroad structures which have lateral situation, growth or extension. The track we are here concerned with was not constructed under the Act of 1832 or its supplements. Whether it should have been is not for us to inquire. As constructed and used it is clearly distinguishable from a lateral road. Not only technically, but in full accord with all our cases where the matter is discussed, it is a branch. The question, what is a branch? is fully answered by Mr. Justice GORDON, in McAvoy's App., 107 Pa. 548, a case which arose under the Act of 1868, and which particularly applies here because of that fact. "There remains then, but the single question; is the proposed extension a branch within the meaning of the act? We think it is. We can not agree that the definition of such a structure shall depend either upon its length or direction. If the projection of the completed road for one square is too short for a branch, then, what distance will be required to allow the use of this term. The question involves in itself its own absurdity. The mistake is found in giving too narrow a definition to the word branch." If then it is a branch road, the right of the defendant company to build it must be conceded. Such right is given expressly by the Act of 1849,

and confirmed by the Act of 1868 under which it is chartered and which in the ninth section, in so many words, gives it the right to construct such branches from its main line as it may deem necessary to increase its business and accommodate the trade and travel of the public. The Act of May 1, 1862, P. L. 586, incorporating the Bethlehem Railroad Company provides that the said railroad "may build lateral railroads not exceeding three miles in length provided that said lateral roads shall only be used for the purpose of bringing material to the main line." The word lateral here used is not to be given its narrow and technical meaning. This must be so, otherwise, if we are to understand it as meaning a lateral road as defined by the Act of 1832, there would be no way in which the right could be exercised. For purely lateral roads the Act of 1832 provides a method by which they may be constructed. Such roads can be built only in accordance with the provisions of the act, and these would be unavailing and inappropriate where railroads are the owners and movers. It follows that as used in this act the word is to be given a larger and more embracing meaning, including all branches or extensions. The limitations and restrictions imposed by the act as to the use of such roads when built, are entirely eliminated by the subsequent incorporation of the defendant company in 1895 under the Act of April 4, 1868, Section 9, which provides "that any company incorporated under this act shall be authorized to construct such branches from its main line as it may deem necessary to increase its business and accommodate the trade and travel of the public." This brings us directly to the one question in the case. The defendant company having under its charter the right to construct branches, and this being a branch as we have tried to show, has it the right to cross a public street in a borough with its tracks without first having the consent of the borough authorities so to do? Our attention has not been directed to any authority expressly conferring

such right. It is insisted, however, that the right may be derived by necessary implication from the early Act of 1849 as well from several of its supplements. The plain provision of the Act of 1868 under which the defendant company is chartered relieves us from any discussion of this question. That act in section twelve provides as follows: "This act shall not be so construed as to authorize the formation of street passenger railway companies to construct passenger railways under or by virtue of its provisions in any city or borough of this Commonwealth, nor to authorize any corporation formed under this act to enter upon and occupy any street, lane or alley in any incorporated city in this Commonwealth without the consent of the city first having been obtained." Herein is no express prohibition of what the defendant company is attempting to do in this case; but the provision excepting out of the power of railroad companies the right to use or occupy the streets of a city without consent of the municipal authorities not only gives rise to a clear and unavoidable implication that the right to cross public thoroughfares had previously existed, but that the right to do so is confirmed by the act, except as to cities, in all cases of branch lines. The reference here of course is to railroads which are by legislative or municipal grant already with its tracks within the municipality. We are of opinion that the defendant company in doing what is here complained of was in the exercise of a lawful power. The assignments of error are overruled and the decree refusing the injunction and dismissing the bill is affirmed.