C. O. Struse & Sons Co., Appellant, *v.* Reading Co.

Argued November 28, 1930. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SADLER, and SCHAFFER, JJ.

212

*Robert Mair,* of *Rambo, Rambo & Mair,* for appellant.—The Reading Company, under the guise of exercise of its power to construct a branch railroad, is using its right of eminent domain for the purpose of constructing a mere private siding for Sears, Roebuck & Co. and not for public use: Pioneer Coal Co. v. Cherrytree & D. R. R., 272 Pa. 43; Getz's App., 10 W. N. C. 453; Rochester & Pittsburgh C. & I. Co. v. Coal M. Co., 24 Pa. C. C. R. 104; Rudolph v. R. R., 166 Pa. 430; Bristol v. Lumber Co., 32 Pa. C. C. R. 647.

In support of plaintiff's right to maintain this bill, we refer to the case of Pioneer Coal Co. v. Cherrytree & D. R. R. Co., 272 Pa. 43, 51.

*Glenn C. Mead,* with him *William J. Graham* and *William I. Woodcock, Jr.,* for appellee.—Whether a proposed piece of railroad is a branch does not depend either upon its length or direction: Bethlehem Boro v. R. R., 253 Pa. 251; Pioneer Coal Co. v. R. R., 272 Pa. 43.

A railroad's right to condemn is not determined by calling the new piece of track a spur or siding.

The location of and the necessity for a branch rest within the discretion of the board of directors of the railroad.

One plant only may be served by a branch railroad without making the use of the latter a private use:

Union Lime Co. v. R. R., 233 U. S. 211; Rochester & Pittsburgh Coal & Iron Co. v. Mining Co. & R. R., 24 Pa. C. C. R. 104; Rudolph v. R. R., 166 Pa. 430; Pioneer Coal Co. v. R. R., 272 Pa. 43; Bristol v. Lumber Co., 32 Pa. C. C. R. 647.

A section of railroad contributing to the general public welfare constitutes a public use: Bristol v. Lumber Co., 32 Pa. C. C. R. 647.

OPINION BY MR. JUSTICE WALLING, January 5, 1931:

Sears, Roebuck & Company has an extensive retail merchandise establishment in the thirty-fifth ward of Philadelphia, having a floor space of forty-three acres and approximately five thousand employees. It handles fourteen thousand different articles of merchandise and has one million seven hundred and fifty thousand customers residing in several states, with whom its business is transacted largely by mail orders. Its merchandise when purchased is shipped in, and when sold is shipped out, largely by rail. This makes an enormous freight and mail order business, amounting to many thousands of car loads annually. The Pennsylvania Railroad affords access to this establishment by its Philadephia and Bustleton branch and, until 1929, the Reading Railroad also had access to it by its Frankford branch. In the year last mentioned Sears, Roebuck & Company, in erecting a large addition to its plant, destroyed the connection theretofore existing with the Reading Railroad. To renew the same, the latter, by proper corporate action, decided to construct a lateral or branch road some twenty-six hundred feet in length, which would appropriate ninety-one one-hundredths of an acre of the land of the plaintiff, C. O. Struse & Sons Company. The Reading Railroad, defendant, being unable to agree with the Struse Company as to the damages, filed a bond and petition for appointment of viewers. Thereupon plaintiff filed this bill, under the Act of June 19, 1871, P. L. 360, to re-

strain the construction of the proposed branch on the averment that it was not a branch for public use, but a mere private siding for the accommodation of Sears, Roebuck & Company. A responsive answer, denying this averment, was filed and testimony taken. The chancellor found all the facts in favor of the defendant and recommended a dismissal of the bill, which in due course the court in banc did and plaintiff has appealed.

The record discloses nothing to justify disturbing the decree. The land taken is vacant property and that such taking will cut off plaintiff's frontage on the Pennsylvania Railroad is a matter that can be adjusted before the viewers. It will afford plaintiff a direct connection with the Reading Railroad and the latter agrees also to give plaintiff a connection with the Pennsylvania Railroad. Plaintiff, although having a plot of some thirty-eight acres of land and being in the brick-making business, has never sought connection with the latter. The branch in question will also occupy land of the Manor Real Estate & Trust Company and that of the Pennsylvania Railroad and will enable the two railroads to make a grade connection, impossible before by reason of the fact that the Reading track was carried over that of the Pennsylvania. At present the branch will not connect with any other business plant but will afford opportunity therefor.

The Sears, Roebuck & Company plant is an established terminal for the railway mail service, known as Sears Station, where seventy-five postal employees are employed to handle outgoing parcels post. In the year 1928, before the old connection was destroyed, the defendant carried for Sears, Roebuck & Company approximately four million consignments of merchandise, the gross earnings from which were $709,466.27. This business was with hundreds of thousands of customers. Furthermore, the defendant has transfer facilities with sixty-five railroads and reaches some points not accessible to the Pennsylvania Railroad. Mani-

festly a branch which will give an interchange of facilities with the railroad last mentioned and necessary to the carrying on of such a business as above stated cannot be treated as a mere private siding. It will accommodate not only Sears, Roebuck & Company, but a large percentage of the public.

The right of a railway company to construct branches is expressly given by statute; as to that, the Act of July 19, 1917, P. L. 1123, provides: "That any railroad company. heretofore or hereafter incorporated under the laws of this Commonwealth, or jointly under the laws of this Commonwealth and of any other state or states, may construct branches from any point or points on its railroad which, in the judgment of its board of directors, are necessary to furnish adequate transportation facilities for, or to accommodate the trade or travel of, the public. In the construction and operation of such branches, the companies constructing the same shall be entitled to avail themselves of the rights and powers conferred upon them by the laws of this Commonwealth, in respect to the construction and operation of their railroads, and shall be subject to all obligations, duties and requirements now or hereafter to be imposed upon them by such laws." This is largely a reënactment of section 8 of the General Railroad Act of April 4, 1868, P. L. 62. The right to build branch railroads thereunder has been many times affirmed by this court. One of the later cases is Pioneer Coal Co. v. Cherrytree & D. R. R. Co., 272 Pa. 43, where Chief Justice MOSCHZISKER, speaking for the court (page 52), states: "Wherever it appears from the attending circumstances that a section of road about to be constructed will in some direct way tend to contribute to the general public welfare, or the welfare of a considerable element of the public, it cannot be said that it will not serve a public use; this principle is now too well established in Pennsylvania to be questioned." The case just cited upholds the right to con-

struct a branch to reach a coal mine. In Getz's App., 10 W. N. C. (Pa.) 453, the right of a railroad company to construct a branch to connect with a rolling mill was sustained. The right to maintain a branch railroad used only to transport freight from a manufacturing plant was sustained in Rudolph v. Schuyl. Val. R. R., 166 Pa. 430. A branch or spur track may constitute a part of the railroad's transportation facilities although when constructed it may lead only to a single industry: Union Lime Co. v. Chicago and North-Western Railway Company, 233 U. S. 211. See also Bethlehem Boro. v. Lehigh & N. E. R. R. Co., 253 Pa. 251; McAboy's App., 107 Pa. 548. In the construction of a branch the railroad company has the same power of eminent domain as in building the main line: Mayor, etc., of Pittsburgh v. The Pennsylvania Railroad Co., 48 Pa. 355. There is no controlling distinction between a coal mine or manufacturing plant which serves the public, and a merchandise establishment, which does the same. Moreover, Sears, Roebuck & Company are engaged or are about to engage in the manufacture of paints on a large scale for commercial purposes.

The burden is upon plaintiff who challenges the right of a railroad to construct its line or a branch thereof to show clearly that the proposed construction is not for a public use: Pioneer Coal Co. v. Cherrytree & D. R. R. Co., supra; Deemor v. Bells Run Railroad Company, 212 Pa. 491. See also Eugene Bristol and Estella Bristol v. The Goodyear Lumber Co., 32 Pa. C. C. 647; Roch. & Pitts. C. & I. Co. v. Berwin-White Coal Mining Co., 24 Pa. C. C. 104. This, plaintiff, in the instant case, failed to do and where, as clearly appears here, the power to do the thing complained of exists, proceedings under the Act of 1871 are at an end: Gring v. Sinking Spring Water Co., 270 Pa. 233; Mountz v. Pittsburgh B. & L. E. R. R. Co., 265 Pa. 67; Williams v. Delaware, L. & W. R. R. Co., 255 Pa. 134. The manner of the exercise of such power is for the

corporate officials and not for the courts. The Act of 1871 is properly invoked only to protect the citizen from unauthorized corporate acts. Defendant having the power to construct the branch in question, the manner of so doing is for the corporation to determine. The courts cannot say that some other route should have been chosen.

The decree is affirmed and the appeal is dismissed at the cost of appellant.