**[J-10A-2024 and J-10B-2024] [MO: Dougherty, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | |
|---|---|
| GARY D. WOLFE AND MARY O. WOLFE, HUSBAND AND WIFE, | : No. 73 MAP 2023 |
| | : |
| | : Appeal from the Order of the |
| Appellants | : Commonwealth Court at No. 649 CD |
| | : 2022, entered on November 14, |
| | : 2022, Reversing and Remanding the |
| v. | : Order of the Berks County Court of |
| | : Common Pleas, Civil Division, at No. |
| | : 22-03762, entered on June 8, 2022. |
| READING BLUE MOUNTAIN AND | : |
| NORTHERN RAILROAD COMPANY, | : ARGUED: April 9, 2024 |
| | : |
| Appellees | : |
| | |
| IN RE: CONDEMNATION OF LANDS OF | : No. 74 MAP 2023 |
| GARY D. WOLFE AND MARY O. WOLFE | : |
| POTTSVILLE PIKE, MUHLENBERG | : |
| TOWNSHIP | : Appeal from the Order of the |
| | : Commonwealth Court at No. 722 CD |
| | : 2022, entered on November 14, |
| | : 2022, Reversing and Remanding the |
| APPEAL OF: GARY D. WOLFE AND MARY | : Order of the Berks County Court of |
| O. WOLFE, HUSBAND AND WIFE | : Common Pleas, Civil Division, at No. |
| | : 22-03847, entered on June 8, 2022. |
| | : |
| | : ARGUED: April 9, 2024 |

**CONCURRING OPINION**

**JUSTICE WECHT**                                    **DECIDED: August 20, 2024**

I join in the result and in most aspects of the Majority Opinion. I write separately

to observe that the modern standard endorsed by this Court in *Middletown Township v.*

*Lands of Stone*[1] differs substantively from the standard that this Court applied a century

---

[1]      939 A.2d 331 (Pa. 2007).

ago in *Pioneer Coal Co. v. Cherrytree & Dixonville R.R. Co.*[2] and *C.O. Struse & Sons Co. v. Reading Co.*[3] The Majority generously indulges Justice Mundy's view that our current standard—the "primary and paramount beneficiary" standard—merely places a new label atop the same concept that this Court applied those many years ago, in the heyday of the American locomotive, before the advent of superhighways and the trucking industry, let alone air freight and other transport modalities.[4] I perceive this concession to be a bit overindulgent, inasmuch as the standard that we endorsed in *Lands of Stone* does more than cloak an old concept in new language. The "primary and paramount beneficiary" standard raises the bar for what constitutes a public purpose.

In both *Pioneer Coal* and *C.O. Struse*, this Court stated that a railroad's taking had a public purpose "wherever it appears from the attending circumstances that a section of road about to be constructed will in some direct way *tend to contribute to the general public welfare*, or the welfare of a considerable element of the public."[5] On its face, that standard is not equivalent to the current one. It is not sufficient, under *Lands of Stone*,

---

[2]    116 A. 45 (Pa. 1922).

[3]    153 A. 350 (Pa. 1931).

[4]    Majority Op. at 21 (crediting Justice Mundy's assertion that the more recent "'primary and paramount' language is simply a more modern label given to the [public purpose] concept'" (quoting Concurring Op. at 4)).

[5]    *Pioneer Coal*, 116 A. at 48 (emphasis added); *C.O. Struse*, 153 A. at 352. I'll add that, even in its own day, the standard articulated by the Court in these two cases was not the only one at play. In *Dornan v. Philadelphia Housing Authority*, this Court identified an ongoing split in our own case law. 200 A. 834, 838-40 (Pa. 1938). On the one hand, case law in the mold of *Pioneer Coal* and *C.O. Struse* only required some direct benefit to the public. On the other, a separate line of precedent interpreted "public use" more narrowly as a "use or right of use by the public." *Id.* at 839 (quoting *Pa. Mut. Life Ins. Co. v. City of Phila.*, 88 A. 904, 907 (Pa. 1913)). Rather than issuing a conclusive formulation of the standard, we acknowledged in *Dornan* that the public purpose standard was fluid, and we predicted that it would likely continue to evolve in tandem with the changing role of government. *Id.* at 840.

that a taking "tend to contribute" to the public welfare in some way. Rather, the public must be "*the primary and paramount beneficiary*" of the taking.[6] While it remains true that the existence of a private benefit will not destroy a *bona fide* public purpose,[7] under *Lands of Stone*, the public purpose must outweigh any private benefit.[8]

The Majority aptly traces the lineage of the "primary and paramount beneficiary" standard from its first appearance in *Price v. Philadelphia Parking Authority*[9] to the present. But we also must acknowledge what the language of this test adds to its predecessors: that the public benefit must have *primacy* over any private benefit. To the extent that the Majority deems the standard applied in *Pioneer Coal* and *C.O. Struse* equivalent to the "primary and paramount beneficiary" standard, I respectfully disagree. While it is true that one might speculate that the takings in *C.O. Struse* and *Pioneer Coal* could have withstood the heightened scrutiny of the modern test,[10] it is also true that this Court applied a lesser standard for "public purpose" in those older cases. In my judgment, it would be best that we now make clear that these venerable authorities should no longer be considered controlling.

---

[6]     *Lands of Stone*, 939 A.2d at 337 (emphasis added); see also *In re Opening Priv. Rd. for Benefit of O'Reilly*, 5 A.3d 246 (Pa. 2010).

[7]     *See in re Legislative Route 62214, Section 1-A*, 229 A.2d 1, 3 (Pa. 1967) ("[A] taking does not 'lose its public character merely because there may exist in the operation some feature of private gain, for if the public good is enhanced it is immaterial that a private interest also may be benefited.'" (quoting *Belovsky v. Redevelopment Auth. of City of Phila.*, 54 A.2d 277, 283 (Pa. 1947))).

[8]     To put a finer point on it, under the modern iteration of the public purpose standard, this Court looks for the "real," "fundamental," or "true purpose" behind a taking. *Lands of Stone*, 939 A.2d at 337. That true purpose must "primarily benefit the public." *Id.*

[9]     221 A.2d 138, 147 (Pa. 1966); Majority Op. at 20-21.

[10]     As the Majority explains, despite connecting a single entity to a railroad's main line, the takings in both *Pioneer Coal* and *C.O. Struse* were attended by record evidence of significant benefits to the public. *See id.* at 18-19.

Ultimately, this problem of evolving precedent does not undo the Majority's analysis or disposition. As the Majority explains, the record shows that the taking by RBMN had no public benefit to speak of,[11] and the Majority correctly applies the higher "primary and paramount beneficiary" standard to find the taking unconstitutional. I fear only that we would be remiss were we not to point out that, far from being stable over the last century, the governing standard has, as we predicted long ago, developed over the course of time and commerce.[12]

---

[11] Majority Op. at 24.

[12] *See Dornan*, 200 A. at 840.